The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 8, 2018

## 2018COA13

**No. 15CA0170, *People v. Van Meter* — Criminal Law — Burden
of Proof — Prosecutorial Misconduct**

A division of the court of appeals considers whether the trial

court erred in allowing the prosecutor's use of a partially completed

puzzle of an iconic and easily recognizable space shuttle image — as

an analogy and a visual display — to explain the concept of

reasonable doubt to the jury. The division concludes that the

challenged conduct constituted prosecutorial misconduct but does

not require reversal under the plain error standard of review.

Also, the division rejects the defendant's assertions that the

trial court reversibly erred in (1) refusing to declare a mistrial after

a prospective juror made potentially prejudicial statements during

voir dire; (2) improperly instructing the jury on the "possession"

element of the crime of possession of a weapon by a previous

offender; and (3) allowing evidence showing that the defendant allegedly used illegal drugs and that the gun he was accused of possessing was stolen.

Accordingly, the division affirms the judgment.

Court of Appeals No. 15CA0170
El Paso County District Court No. 14CR2764
Honorable Michael P. McHenry, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Wayne Jared Van Meter,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FOX
Furman and Ashby, JJ., concur

Announced February 8, 2018

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Meredith K. Rose, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Wayne J. Van Meter, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a weapon by a previous offender (POWPO). Although the prosecutor's use of a partially completed puzzle of an iconic and easily recognizable space shuttle image to explain the concept of reasonable doubt constituted prosecutorial misconduct, we ultimately conclude that the trial court did not reversibly err by allowing the conduct where no contemporaneous objection was made. We therefore affirm.

I.     Background

¶ 2 In 1988, Van Meter pleaded guilty to multiple crimes, including two counts of felony aggravated robbery, and was sentenced to serve thirty-two years in the Department of Corrections' custody. In June 2013, Van Meter was released on parole.

¶ 3 Johnny Gilliland, a construction industry employer, hired Van Meter after his release. In June 2014, Gilliland told Van Meter's parole officer that Van Meter had a gun in his car and was possibly using heroin and stealing from customers. Gilliland directed Van Meter to a jobsite, where the parole officer and three other officers

1

waited. When Van Meter arrived, the officers arrested him and found a loaded semi-automatic handgun inside of a toolbox in the trunk of his car.

¶ 4    Van Meter was charged with one count of POWPO, pursuant to section 18-12-108(1), (2)(c), C.R.S. 2017. A jury found him guilty.

## II.    The Prospective Juror Panel

¶ 5    Van Meter argues that the trial court reversibly erred in failing to declare a mistrial after a prospective juror stated in front of the panel that he was aware of the underlying case because he was a deputy sheriff and had transported Van Meter to court. We disagree.

## A.    Additional Facts

¶ 6    During voir dire, the following interaction occurred in front of the panel of prospective jurors:

> [THE COURT:] Anyone else believe they're suffering a true hardship[?]
>
> PROSPECTIVE JUROR: Yes, sir. Not a hardship, but I'm aware of the case. I'm a deputy sheriff.
>
> THE COURT: And you look familiar to me . . . . You're aware of this particular case, the [Van Meter] case?

> PROSPECTIVE JUROR: Yes, sir.  I've transported him to court.

The trial court then dismissed the prospective juror for cause, and defense counsel asked to approach the bench.

¶ 7    Defense counsel argued that the prospective juror's statement suggested that Van Meter "is in custody" and, thus, might bias the entire panel.  Defense counsel then requested a new panel of prospective jurors.  The trial court denied the request, determining that the statement did not taint the panel "in a trial that's necessarily going to involve the jurors gaining knowledge of the fact that [Van Meter] has a prior felony conviction."  The trial court also noted that the statement did not indicate *when* the prospective juror transported Van Meter to court.

### B.    Preservation and Standard of Review

¶ 8    The parties agree that this issue was properly preserved.

¶ 9    We review a trial court's decision to deny a mistrial for an abuse of discretion.  *People v. Marko*, 2015 COA 139, ¶ 29 (*cert. granted on other grounds* Oct. 24, 2016).  An abuse of discretion occurs when a trial court's ruling is manifestly arbitrary, unreasonable, or unfair, or contrary to law.  *People v. Relaford,*

2016 COA 99, ¶ 25. "Under the abuse-of-discretion standard, an appellate court must affirm the trial court's decision if there is any evidence in the record to support the trial court's finding." *People v. Muckle,* 107 P.3d 380, 383 (Colo. 2005). Moreover, the "trial court is in a better position to evaluate any adverse effect of improper statements or testimony on a jury, [so] it has considerable discretion to determine whether a mistrial is warranted." *People v. Tillery,* 231 P.3d 36, 43 (Colo. App. 2009), *aff'd sub nom. People v. Simon,* 266 P.3d 1099 (Colo. 2011).

### C.   Law and Analysis

¶ 10    "When a prospective juror makes a potentially prejudicial statement during voir dire, the trial court may issue a curative instruction; canvass the jury; or declare a mistrial." *Vititoe v. Rocky Mountain Pavement Maint., Inc.,* 2015 COA 82, ¶ 20. Generally, a curative instruction issued after a prejudicial statement is made remedies any harm caused by the statement. *People v. Mersman,* 148 P.3d 199, 203 (Colo. App. 2006). "However, to receive a curative instruction, a defendant must request it, and a trial court does not commit plain error if it does not give a curative instruction sua sponte." *Id.* (concluding that the trial court did not commit

4

plain error in failing to issue a curative instruction or canvass the jury where defense counsel failed to request either remedy).

¶ 11    Because a mistrial is the most drastic of remedies, one is "only warranted where the prejudice to the accused is too substantial to be remedied by other means." *People v. Collins*, 730 P.2d 293, 303 (Colo. 1986).  Factors relevant to whether a mistrial is warranted include the nature of the inadmissible evidence, the weight of the admissible evidence of the defendant's guilt, and the value of a cautionary instruction.  *Tillery*, 231 P.3d at 43.

¶ 12    A defendant's due process right to a fair trial may be implicated when a jury is exposed to information outside of properly admitted evidence or information included in the court's instructions.  *Marko*, ¶¶ 30, 32.  In determining whether a jury's exposure to such extraneous information violated a defendant's right to a fair trial, we ask, first, whether the information was improperly before the jury and, second, "whether there is a reasonable possibility that the extraneous information influenced the verdict" to the defendant's detriment.  *Id.* at ¶ 31.

¶ 13    Even if the prospective juror's comments here were potentially prejudicial, we conclude that the trial court did not err in declining

to declare a mistrial because there is no "reasonable possibility that the extraneous information influenced the verdict" to Van Meter's detriment. *See id.* The challenged comments were brief, totaling only a few lines in the multi-page transcript from the two-day trial, and trial counsel never mentioned them again. *See People v. Lahr*, 2013 COA 57, ¶ 24 (noting that inadmissible evidence typically will have less prejudicial impact if it appears only in a fleeting reference). The record supports the trial court's determination that the challenged comments did not taint the entire panel because they did not necessarily imply that the deputy sheriff transported Van Meter to court for the underlying case — rather than for a previous case — especially where the POWPO charge required the jury to learn that Van Meter had a prior felony conviction: aggravated robbery.

¶ 14    Moreover, the record indicates that all who ultimately served on the jury indicated that they would be fair and impartial; the deputy sheriff and the only other potential juror who indicated that she could not be impartial were dismissed for cause. "As a result, plaintiff's contention relies solely 'on speculation as to the effect, if any, the potential jurors' statements had on the actual jurors.'"

6

*Vititoe*, ¶ 31 (citation omitted); *see also United States v. Jones*, 696 F.2d 479, 491-92 (7th Cir. 1982) (holding that the defendants were tried by an impartial jury even though two prospective jurors made improper comments and the entire panel heard those comments where the two prospective jurors were dismissed).

¶ 15    Additionally, defense counsel did not request that the trial court canvas the jury or issue a curative instruction — two lesser means to remedy any prejudice from the challenged statements. *See Collins*, 730 P.2d at 303.  The trial court, therefore, did not err in failing to act sua sponte.  *See Mersman*, 148 P.3d at 203.

¶ 16    For these reasons, we conclude that the trial court did not abuse its discretion in declining to declare a mistrial and the jury's exposure to the deputy sheriff's brief comments did not deprive Van Meter of a fair trial or due process.  *See Relaford*, ¶ 25; *Marko*, ¶ 31.

### III.    Prosecutorial Misconduct

¶ 17    Van Meter next asserts that the trial court reversibly erred by allowing the prosecutor to show the jury a picture of an incomplete puzzle depicting an iconic and easily recognizable image of a space shuttle to explain the prosecution's burden of proof, despite the lack of a contemporaneous objection.  Although the challenged

behavior constituted prosecutorial misconduct, the trial court did not commit plain error by allowing it.

## A. Additional Facts

¶ 18    The trial court instructed the prospective jurors on the prosecution's burden of proof and defined "reasonable doubt" as

> a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence or the lack of evidence in the case. It is a doubt which is not a vague, speculative, or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

¶ 19    Later, during voir dire, the prosecutor explained that he only had to prove each element of the charged crime beyond a reasonable doubt and that it was possible to do so while "missing pieces" remained. The prosecutor then showed the panel the following picture of a puzzle of a space shuttle containing thirty-five pieces — twelve (or thirty-four percent) of which are missing:



The prosecutor used this photo to explain his burden of proof, asking the potential jurors whether "anyone [had] a reasonable doubt that this is a space shuttle?" After no potential juror raised his or her hand — which would have indicated that the potential juror thought the image was not beyond a reasonable doubt a space shuttle — the prosecutor stated, "If you focus on the pieces that

9

you're missing, you don't see the picture, but if you focus on the pieces that you have, it's beyond a reasonable doubt a space shuttle. Isn't that correct? Does anyone disagree with that? All right [sic]."

¶ 20    The prosecutor showed the picture to the jury again during closing arguments, stating the following:

> There's no conspiracy. There might be questions, though. There might be holes in the story. There might be things that you still want to know, that you didn't hear, that you didn't see. We talked about this in voir dire. That doesn't rise to the level of a reasonable doubt. If you focus on the holes in the puzzle, you don't see the picture. But if you can see that picture, if you can say beyond a reasonable doubt that is what that is, then you should find the defendant guilty. And there will be questions, and there will be holes, but they don't rise to the level of a reasonable doubt.

¶ 21    The trial court instructed the jurors before they began deliberating — repeating the pattern "reasonable doubt" definition — and provided the "reasonable doubt" definition with the written instructions.

B.    Preservation, Standard of Review, and Applicable Law

¶ 22    The parties agree that Van Meter failed to preserve this issue.

¶ 23    Our review of a claim of prosecutorial misconduct involves a two-step analysis.  *People v. Howard-Walker*, 2017 COA 81M, ¶ 83 (citing *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010)).  We first determine whether the conduct at issue was improper based on the totality of the circumstances.  *Id.*  Next, we determine whether any misconduct warrants reversal.  *Id.*

¶ 24    We evaluate claims of improper argument "in the context of the argument as a whole and in light of the evidence before the jury."  *People v. Geisendorfer*, 991 P.2d 308, 312 (Colo. App. 1999).  A "prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts."  *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010).  A prosecutor also "may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance, so long as he or she does not thereby induce the jury to determine guilt on the basis of passion or prejudice, attempt to inject irrelevant issues into the case, or accomplish some other improper purpose."  *People v. Allee*, 77 P.3d 831, 837 (Colo. App. 2003).  A prosecutor may not misstate the evidence or the law.  *See Howard-Walker*, ¶ 83; *Marko*, ¶ 206.

11

¶ 25    Whether a prosecutor committed misconduct is an issue within the trial court's discretion.  *See Strock*, 252 P.3d at 1152. We will not disturb the court's ruling absent an abuse of discretion "resulting in prejudice and a denial of justice."  *Id.*  Under this standard, we ask not "whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options."  *People v. Rhea*, 2014 COA 60, ¶ 58 (citation omitted).

¶ 26    We review unpreserved claims of error for plain error.  *See People v. Acosta*, 2014 COA 82, ¶ 77.  Reversal is required under this standard only if the error was obvious and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *Hagos v. People*, 2012 CO 63, ¶ 14 (citation omitted).  "Prosecutorial misconduct rarely constitutes plain error."  *People v. Carter*, 2015 COA 24M-2, ¶ 53.

¶ 27    Only two published cases in Colorado have addressed the use of a puzzle analogy to explain the reasonable doubt standard.  *See People v. Camarigg*, 2017 COA 115M, ¶ 34; *Carter,* ¶ 50.

¶ 28     In *Camarigg*, the prosecutor used a puzzle analogy in rebuttal closing, describing an incomplete puzzle of an image of a tiger and explaining how circumstantial evidence was sufficient proof beyond a reasonable doubt.  *Camarigg*, ¶¶ 36, 38.  That division reasoned that puzzle analogies can be problematic if they (1) "quantify the concept of reasonable doubt"; (2) "inappropriately trivialize the state's burden"; (3) "equate the burden of proof to an everyday choice"; or (4) "use iconic images, which invite the jury to jump to a conclusion about a defendant's guilt."  *Id.* at ¶¶ 44-47; *see also People v. Centeno*, 338 P.3d 938, 947 (Cal. 2014) ("It is  . . . misleading to analogize a jury's task to solving a picture puzzle depicting an actual and familiar object unrelated to the evidence.").

¶ 29     Noting that the prosecutor did not actually display a partial image of a tiger and contrasting that to "more problematic cases," that division held that "any impropriety in the prosecutor's analogy was harmless beyond a reasonable doubt."  *Id.* at ¶¶ 51, 53.

¶ 30     In *Carter*, the trial court analogized the reasonable doubt standard to a puzzle during voir dire and later allowed the prosecutor to make similar comments.  *Carter*, ¶ 50.  That division held that, assuming the challenged statements were improper, the

trial court had not committed plain error in allowing them because the error was neither obvious nor substantial under those circumstances. *Id.* at ¶ 61.

### C.  Analysis

¶ 31     We conclude that the prosecutor's use of a puzzle analogy, including the display of an incomplete puzzle of the iconic and easily recognizable space shuttle image, was improper.  During voir dire, the prosecutor showed the potential jurors an incomplete puzzle of a space shuttle (with only sixty-six percent of the pieces present), stated that the image was a space shuttle "beyond a reasonable doubt," and asked the potential jurors whether anyone disagreed, which none did; the prosecutor also showed the image during closing arguments.  By using the iconic and easily recognizable space shuttle image, the prosecutor "invite[d] the jury to jump to a conclusion about [the] defendant's guilt," especially because the jury was shown an image and told that it was a space shuttle "beyond a reasonable doubt."  *Camarigg,* ¶¶ 47, 51; *see also People v. Katzenberger,* 101 Cal. Rptr. 3d 122, 127 (Cal. Ct. App. 2009) (concluding that a prosecutor improperly quantified the burden of proof by displaying an eight-piece puzzle of the Statue of

Liberty missing two pieces and saying "this picture is beyond a reasonable doubt"). The prosecutor's use of a two-thirds completed puzzle analogy also improperly quantified the burden of proof, even where the prosecutor did not undertake to quantify the number or percentage of missing pieces. *See Camarigg*, ¶ 44.

¶ 32 Although the challenged conduct was improper, the trial court did not commit plain error in allowing the conduct absent a contemporaneous objection. We are not persuaded that the error in allowing the conduct, without the benefit of the guidance provided by this opinion, was "obvious and so clear-cut that a trial judge should have been expected to avoid it without benefit of an objection." *Carter*, ¶ 58 (assuming that allowing the use of a puzzle analogy was improper and concluding that it was not obvious for purposes of plain error review); *see also People in Interest of T.C.C.*, 2017 COA 138, ¶ 15 ("An error is obvious if it contravenes either a clear statutory command, a well-settled legal principle, or Colorado case law.").

¶ 33 Moreover, in this case, the challenged conduct did not "so undermin[e] the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."

15

*Hagos*, ¶ 14 (citation omitted). The trial court instructed the jurors multiple times on the proper meaning of "reasonable doubt." *See People v. McKeel*, 246 P.3d 638, 641 (Colo. 2010) ("We presume that jurors follow the instructions that they receive."); *see also State v. Crawford*, 262 P.3d 1070, 1081-82 (Kan. Ct. App. 2011) (concluding that the prosecutor's use of a puzzle analogy was misconduct, but did not require reversal due to correct jury instructions), *aff'd*, 334 P.3d 311 (Kan. 2014). *But see People v. Wilds*, 529 N.Y.S.2d 325, 327 (N.Y. App. Div. 1988) (holding that the trial court reversibly erred in explaining that, even though there might be some blank spaces in a puzzle of Abraham Lincoln, reasonable doubt is satisfied if you can still tell that it is Lincoln because "the average American juror would recognize a jigsaw puzzle of Abraham Lincoln, long before all of the pieces are in place"). The prosecutor's use of the puzzle analogy was relatively brief and isolated. *See Carter*, ¶ 60; *People v. Munsey*, 232 P.3d 113, 124 (Colo. App. 2009) (concluding that it was "unlikely that this comment substantially influenced the verdict" where the challenged comment was made in an isolated portion of closing and absent other allegations of prosecutorial misconduct during closing). And, the lack of a

contemporaneous objection is also telling. *See People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990) ("The lack of an objection may demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.") (citation omitted).

¶ 34 Importantly, the record contains undisputed evidence that the parole officers saw Van Meter arrive at the jobsite in a car, arrested Van Meter, immediately searched the car, and found a loaded handgun in the car's trunk; Gilliland also testified that he had seen Van Meter with the gun and had spoken to him about it. *See People v. Butler*, 2017 COA 98, ¶ 11 ("The determination of the credibility of witnesses rests solely within the province of the jury."); *People v. Munoz-Casteneda*, 2012 COA 109, ¶ 35 (holding that the prosecutor's improper conduct did not require reversal under plain error review in light of overwhelming evidence of the defendant's guilt). Because all the elements of the POWPO charge were clearly proven, and the error was neither obvious nor substantial here, we conclude that the trial court did not plainly err in allowing the prosecutor's improper conduct. *See Carter*, ¶ 57.

## IV.   Jury Instruction

¶ 35     According to Van Meter, the trial court erroneously instructed the jury on the definition of "possession" in the context of the POWPO charge.  We perceive no error.

### A.   Additional Facts

¶ 36     A person commits the crime of POWPO if the person "knowingly possesses, uses, or carries upon his or her person a firearm . . . subsequent to the person's conviction for a felony . . . under Colorado or any other state's law or under federal law." § 18-12-108(1).

¶ 37     During voir dire — after a prospective juror asked defense counsel, "[A]re you in possession if the weapon is in your possession?" — defense counsel and the prosecutor approached the bench to discuss the instructions on the possession element of the crime of POWPO.  The trial court stated,

> So I'm looking at a definition of . . .
> "possession" . . . in the new criminal jury
> instructions . . . .  And if there was one
> candidate for the least-favorite change in the
> new instructions, it would be this definition
> right here.  The old definition of "possession"
> used to talk about being in dominion and
> control . . . I suppose [the new instruction]
> does still talk in terms of possession or control,

18

and it just adds — it connects it up to the concept of a voluntary act. So is there any objection to me reading the new definition?

Defense counsel responded, "No objection."

¶ 38    The trial court then instructed the prospective jurors that "[p]ossession constitutes a voluntary act if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to have terminated it." One prospective juror responded, "That's pretty clear." Defense counsel further discussed the definition of "possession" in the context of the crime of POWPO with the prospective jurors.

¶ 39    After all evidence was presented, the trial court conferred with the prosecutor and defense counsel to finalize the jury instructions. The trial court asked whether the parties objected to the page of instructions containing the definition of terms, including defining "possession" as "constitut[ing] a 'voluntary act' if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to have terminated it." Defense counsel responded, "No objection." At the end of the instructional conference, the trial court reviewed each proposed jury instruction,

19

including the instruction on the definition of "possession."  Defense counsel again stated, "No objection."

### B.    Preservation, Standard of Review, and Applicable Law

¶ 40    The parties agree that this issue is unpreserved, but they dispute whether Van Meter waived his objection to the challenged instruction.  We need not decide the waiver issue because, in any event, there was no error.

¶ 41    "[A] trial court is obligated to instruct the jury correctly on the law applicable to the case."  *People v. Stewart*, 55 P.3d 107, 120 (Colo. 2002).  We review jury instructions de novo, considering them as a whole to determine whether they accurately informed the jury of the governing law.  *People v. Lucas*, 232 P.3d 155, 162 (Colo. App. 2009).  The trial court has substantial discretion in formulating the instructions, "so long as they are correct statements of the law and fairly and adequately cover the issues presented."  *People v. Nerud*, 2015 COA 27, ¶ 35 (quoting *People v. Gallegos*, 226 P.3d 1112, 1115 (Colo. App. 2009)).

¶ 42    Where a defendant fails to object to a trial court's jury instruction, we normally apply the plain error standard of review.  *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001); *Acosta*, ¶ 77.

Reversal is required under this standard only if the error was obvious and "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (citation omitted); *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). "[W]ith respect to jury instructions, reversal under a plain error standard requires a defendant to 'demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to [the] conviction.'" *Garcia*, 28 P.3d at 344 (quoting *Bogdanov v. People*, 941 P.2d 247, 255-56 (Colo. 1997)). "[A]n erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *Miller*, 113 P.3d at 750; *see* Crim. P. 30 ("All instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. Only the grounds so specified shall be considered on motion for a new trial or on review.").

## C.    Analysis

¶ 43    The trial court's challenged instruction — framing "possession" in terms of "physical possession or control" — mirrors

the generally accepted meaning of the term "possession" and the pattern instruction in the POWPO context. *See People v. Martinez*, 780 P.2d 560, 561 (Colo. 1989) ("'[P]ossession' is 'a common term which is to be given its generally accepted meaning' [and it means] 'the actual or physical control of a firearm.'" (quoting *People v. Garcia*, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979))). The evidence of Van Meter's guilt was focused on Van Meter's possession of a specific gun found at the scene of his arrest. *See Miller*, 113 P.3d at 750. Defense counsel explained in detail his theory that, although the gun was in the car Van Meter drove that day, he was unaware of its presence because Gilliland set him up. This defense theory, which focused on the assertion that Van Meter did not *knowingly* possess the gun, was ultimately rejected by the jury. The challenged instruction and any related questions were discussed at length during voir dire. And, defense counsel affirmatively declined to object to the challenged instruction three times. *See Domingo-Gomez v. People*, 125 P.3d 1043, 1054 (Colo. 2005) ("The lack of an objection may demonstrate the defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging.") (citation omitted).

¶ 44     Under these circumstances, we are unconvinced that the trial
court's decision to give the challenged instruction was incorrect or
otherwise confusing to the extent that it constituted plain error.
*See Hagos*, ¶ 14.

## V.     Evidentiary Issues

¶ 45     Van Meter next contends that the trial court reversibly erred in
allowing evidence in violation of CRE 402, 403, 404(b), and 802:
namely, evidence that the gun was stolen and that Van Meter was
allegedly using illicit drugs.  We disagree.

### A.     Additional Facts

¶ 46     Before trial, defense counsel moved for disclosure of all prior
or criminal acts the prosecution intended to use or present at trial.
At a hearing in October 2014, the prosecutor stated that "other
than proof of the prior conviction to prove the [POWPO], there is no
404(b) [evidence] anticipated."  The trial court then asked, "So is
there really any ruling to enter today since the defense is on notice
of [the prior case and conviction]?"  Defense counsel responded, "I
don't think there's anything we can do today, Your Honor."  The
trial court agreed.

¶ 47    At trial, before voir dire, defense counsel said that he had learned that Gilliland had accused Van Meter of committing various other bad acts, "includ[ing] a theft from a jobsite while [Van Meter] was working for [G]illiland, an insurance scam[,] [Van Meter] actually stealing from [G]illiland, and also [Van Meter] stealing jewelry from jobsites."  Defense counsel moved to exclude the noted other bad acts.  The prosecutor said that he had no plan to "get into any of the prior acts," and the trial court granted the motion, broadly stating that there "will be no mention of any prior bad acts."

¶ 48    In his opening statement, defense counsel argued that Gilliland lied and "set up" Van Meter, who did not know about the gun in the trunk.

¶ 49    During direct examination of Van Meter's parole officer, the prosecutor asked about Gilliland's report of Van Meter's alleged illegal activity.  The parole officer testified that Gilliland "claimed [Van Meter] was possibly using heroin, possibly stealing from customers, and . . . had a weapon[.]"  Defense counsel did not object.  The parole officer continued to describe the investigation and arrest; he testified, without objection, that he contacted the Colorado State Police, who used a serial number on the gun found

24

in Van Meter's car to determine that the gun was stolen before taking the gun into their custody.

¶ 50    On cross-examination, the following exchange occurred:

> Q.  [Gilliland] told you about this information, about [Van Meter] supposedly carrying a weapon, correct?
>
> A.  He also said he was supposedly using heroin.
>
> Q.  Heroin.  And also methamphetamine; is that correct?
>
> A.  And he also claimed that he was using flush kits to try to beat the urinalysis.

Defense counsel then elicited testimony that Van Meter never tested positive for heroin or methamphetamine, and neither heroin nor methamphetamine was found on Van Meter or in his car when he was arrested.  Defense counsel later asked about the gun's stolen status.  The parole officer responded that he did not know when the gun was stolen.

¶ 51    During the direct examination of a second parole officer involved in the investigation, the officer testified, without objection, that Van Meter's parole officer "said that he had received information that [Van Meter] had been using drugs and was in

25

possession of a weapon." Van Meter does not expressly challenge the second parole officer's testimony in his briefs on appeal.

¶ 52    The prosecution examined a third parole officer involved in the investigation. On cross-examination, defense counsel elicited testimony that no illegal drugs or other contraband was found on Van Meter when he was arrested.

¶ 53    Next, during direct examination, Gilliland testified that he was convicted of four felonies, including methamphetamine possession, and was on probation. Gilliland also testified that Van Meter's behavior was becoming erratic and, when Gilliland asked him whether he was "getting high again," he denied it. Further, Gilliland testified about an incident where Van Meter arrived at a jobsite and Gilliland noticed that "he was really high . . . I could tell he was high."

¶ 54    On cross-examination, defense counsel challenged Gilliland's credibility by asking him about his prior convictions. The prosecutor objected on relevance grounds, and defense counsel stated, "I do intend to get into [Gilliland's] meth conviction as 404(b) evidence, as it goes to his knowledge of [meth and] the effects that it has on people." The trial court ruled that, when asking Gilliland

about his prior convictions, defense counsel could "briefly get into the nature of the conviction." Defense counsel then asked Gilliland about methamphetamine, and the prosecution raised a relevance objection. Defense counsel stated the following:

> Gilliland has testified that he allowed [Van Meter] to remain on job sites while under the influence of methamphetamine. I'm crossing him about what was going on in his mind at that time, that he would actually allow somebody to be unsupervised on a job site that he's responsible for . . . . We're attacking this witness and his story saying that there's all this drug use, that this guy is such a bad guy, he held off on reporting it, that we absolutely do not believe that to be the truth, and we wanted to show the jury this happened.

The trial court ruled that defense counsel had "a little leeway" to continue with this questioning; defense counsel did so, repeatedly asking Gilliland about his accusations concerning Van Meter's gun and drug use. Defense counsel later asked Gilliland about his allegations concerning thefts at various jobsites. The prosecutor objected on the grounds of relevance and CRE 404(b). Defense counsel responded,

> I'm attacking his credibility and opening the door . . . I'm asking about these prior accusations that [G]illiland has made against [Van Meter]. They're accusations that he's

27

mentioned to law enforcement more than once, in which he continued to employ [Van Meter] afterwards. It goes towards our theory of defense.

Defense counsel then clarified that he was opening the door to Gilliland's prior accusations that Van Meter "stole a number of large appliances from a home sometime near the date of the arrest . . . . [O]ur theory is that [G]illiland was doing unlawful things in his company and that [Van Meter] is essentially a scapegoat." During redirect examination, Gilliland, speaking about why he called Van Meter's parole officer, testified, "I didn't know if I should do something about it. I mean, a high person with a weapon, armed robbery history, you know, they're on the road to hurting other people."

¶ 55 The prosecutor next questioned a police officer involved in the investigation. During cross-examination, defense counsel elicited testimony that the gun was stolen in 2012 while Van Meter was in prison. Defense counsel asked, "So if somebody was in prison in 2012, they could not have stolen that gun; is that fair to say?" The officer responded, "That wouldn't be impossible. It would be difficult for that person to steal the gun. Could they coordinate it?

28

Of course." The officer also testified that, when Van Meter was arrested and the gun was recovered, it was "not [his] concern" whether Van Meter was connected to the original theft of the gun.

¶ 56    After the close of the prosecution's case-in-chief, defense counsel called Van Meter's parole officer and questioned him about Van Meter's alleged illegal drug use. Defense counsel elicited testimony that Van Meter was not drug tested on the day of his arrest, nor did the parole officer document that Van Meter was under the influence of methamphetamine or heroin.

¶ 57    The prosecutor repeatedly referred to Gilliland's allegations regarding Van Meter's illegal drug use during his closing argument and stated the following:

> Was it meth or was it heroin? Lots of questions about whether [Gilliland] knew it was meth, and he'd seen meth and he knows what meth is like and he knows what somebody on meth looks like. Or was it heroin? It doesn't matter. [Van Meter] is guilty of possessing the weapon. He hasn't been charged with any drug crime. The fact that he didn't have any drugs on him when the parole officers found him, [G]illiland explained that to you. He said, if you bought drugs, you'd smoke them or use them.

The prosecutor also noted Gilliland's "criminal history with drugs" and knowledge of methamphetamine, but emphasized that these facts do not "mean that what [Gilliland] said on the witness stand was untruthful."

¶ 58  During defense counsel's closing, he reiterated Van Meter's theory of the case — Gilliland lied and set him up.  Defense counsel highlighted inconsistencies regarding Gilliland's allegations of Van Meter's drug use, then highlighted other inconsistencies in Gilliland's testimony.  Regarding why he asked Gilliland about his prior drug convictions, defense counsel stated,

> His prior convictions for methamphetamine, the reason we explored those is because they further bolster his knowledge and the unbelievability of him allowing a person who he knows to be using these drugs to be going into these houses.  I wasn't trying to drag him through the mud, but when a man tells me he doesn't know about heroin, that heroin is even addictive, we have to talk about the methamphetamine.

### B.    Preservation and Standard of Review

¶ 59  We conclude that Van Meter failed to preserve this issue. Although the trial court never made a definitive ruling regarding the challenged evidence's admissibility, Van Meter later failed to

30

contemporaneously object to the challenged evidence.  *See Camp Bird Colo., Inc. v. Bd. of Cty. Comm'rs*, 215 P.3d 1277, 1289-90 (Colo. App. 2009) ("Once the trial court makes definitive rulings either at or before trial, the objecting party need not renew the objection contemporaneously during trial to preserve a claim of error on appeal.").  The trial court broadly ruled on the first day of trial that there "will be no mention of any prior bad acts"; this ruling resolved Van Meter's pretrial Rule 404(b) motion, which only referenced alleged thefts.  The Rule 404(b) motion made no mention of the evidence Van Meter now challenges.

¶ 60    We review unpreserved claims of error for plain error.  *See Acosta*, ¶ 77.  We review a trial court's evidentiary rulings for an abuse of discretion.  *Relaford*, ¶ 25.

C.    Applicable Law

¶ 61    To be admissible, evidence must be relevant.  CRE 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401.

31

¶ 62    Evidence of other acts is not admissible to prove the character of a person in order to show that the person acted in conformity with that character.  CRE 404(b).  However, such evidence is admissible for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  *See id.*

¶ 63    To admit evidence of other acts under CRE 404(b), a trial court must find that the evidence (1) "relates to a material fact"; (2) is "logically relevant"; (3) has such relevance "independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character" and acted in conformity therewith; and (4) satisfies CRE 403 by having probative value that is not "substantially outweighed by the danger of unfair prejudice." *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).  The third prong of this test "does not demand the absence of the inference"; rather, it "merely requires that the proffered evidence be logically relevant independent of that inference" because all evidence of other bad acts could support a propensity inference.  *People v. Snyder*, 874 P.2d 1076, 1080 (Colo. 1994).

¶ 64    Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  CRE 801(c).  If an out-of-court statement is not offered for its truth, it is admissible as nonhearsay evidence as long as it is relevant.  *See* CRE 402; *see also People v. Welsh*, 176 P.3d 781, 790 (Colo. App. 2007).  If a statement is hearsay, it is inadmissible unless it falls within an exception to the hearsay rule.  CRE 802.

## D.    Analysis

¶ 65    We conclude that any error in allowing the challenged evidence did not rise to the level of plain error.

¶ 66    We are not persuaded that any error in allowing the challenged evidence was obvious where defense counsel offered no contemporaneous objections and strategically chose to elicit Rule 404(b) evidence, regardless of his earlier motion, to further his theory that Gilliland lied and set up Van Meter.  *See Hagos*, ¶ 14.  Defense counsel expressly stated that he was "opening the door" to evidence of Van Meter's involvement in various alleged thefts to challenge Gilliland's credibility.  Defense counsel also elicited testimony about methamphetamine, making the first mention of

that drug at trial during the cross-examination of Van Meter's parole officer. Defense counsel then extensively used evidence of Gilliland's methamphetamine possession conviction to further challenge his credibility. Additionally, the evidence that the gun was stolen and that Van Meter was allegedly using illegal drugs arguably explained why the investigation proceeded the way it did. *See People v. Penn*, 2016 CO 32, ¶¶ 31-33 (reasoning that officers may, in some circumstances, testify about "the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects").

¶ 67 Further, admitting the challenged evidence did not "so undermin[e] the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (citation omitted). As already detailed, there was overwhelming evidence of Van Meter's guilt, including Gilliland's testimony. *See People v. Clark*, 2015 COA 44, ¶ 175 ("It is the function of the [trier of fact], and not the reviewing court, to weigh evidence and determine the credibility of the witnesses.") (citation omitted); *Munoz-Casteneda*, ¶ 35; *see also Page v. Clark*, 197 Colo. 306, 313, 592 P.2d 792, 796 (1979) (The fact finder's "presence

34

during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence[.]").  Also, both Gilliland's and Van Meter's prior felony convictions and criminal histories garnered substantial attention at trial.  Thus, we remain unconvinced that evidence of Van Meter's alleged criminal acts unfairly prejudiced the jury against him, but not against Gilliland.

¶ 68     For these reasons, we conclude that the trial court did not plainly err in allowing the challenged evidence.  *See Hagos*, ¶ 14.

VI.    Conclusion

¶ 69     The judgment is affirmed.

JUDGE FURMAN and JUDGE ASHBY concur.