19CA1135 Peo v Debusk 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1135 El Paso County District Court No. 16CR6546 Honorable Michael P. McHenry, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Christopher Wayne Debusk, Defendant-Appellant. JUDGMENT AFFIRMED Division A Opinion by JUDGE FOX Freyre and Lipinsky, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Paul E. Koehler, First Assistant Attorney General, Holly M. Barrett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee The Law Firm of Tanja Heggins, P.C., Tanja Heggins, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Christopher Wayne Debusk, appeals his conviction entered on a jury verdict finding him guilty of five counts of sexual assault on a child (position of trust) and five counts of aggravated incest. Debusk claims that a prospective juror’s statements during voir dire required the trial court to strike the entire panel and declare a mistrial. We reject Debusk’s claim and affirm. I. Background ¶ 2 Debusk’s biological daughter accused him of sexually abusing her when she was ten years old. She and others involved in investigating her allegations testified against Debusk at trial. ¶ 3 Before jury selection, a prospective juror saw Debusk acting irate and overheard him utter angry statements about the district attorney. The matter was brought to the court’s attention during voir dire, and Debusk’s counsel asked for a mistrial and a new jury panel. After a colloquy with counsel, the court denied the request. ¶ 4 The jury found Debusk guilty of the mentioned counts but acquitted him of one count of sexual assault on a child (position of trust, victim less than fifteen years old, and as part of a pattern of abuse) and one count of aggravated incest. The court sentenced 
2 Debusk to forty-eight years to life in the custody of the Department of Corrections. II. Legal Framework A. Standard of Review ¶ 5 A trial court’s decision to grant or deny a new trial is a matter entrusted to the court’s discretion and will not be disturbed on review absent an abuse of that discretion. People v. Wadle, 97 P.3d 932, 936 (Colo. 2004); People v. Newman, 2020 COA 108, ¶ 9. A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, People v. Clark, 2015 COA 44, ¶ 215, and it “necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.” Wadle, 97 P.3d at 936 (citation omitted). ¶ 6 Whether extraneous prejudicial information was before the jury presents a mixed question of law and fact. Kendrick v. Pippin, 252 P.3d 1052, 1064 (Colo. 2011), abrogated on other grounds by Bedor v. Johnson, 2013 CO 4; People v. Holt, 266 P.3d 442, 444 (Colo. App. 2011). We review de novo the trial court’s conclusions of law, but we defer to the court’s findings of fact if they are 
3 supported by competent evidence in the record. People v. Harlan, 109 P.3d 616, 624 (Colo. 2005). B. Applicable Law ¶ 7 Because a mistrial is the most drastic of remedies, one is “only warranted where the prejudice to the accused is too substantial to be remedied by other means.” People v. Collins, 730 P.2d 293, 303 (Colo. 1986); People v. Van Meter, 2018 COA 13, ¶ 11 (quoting Collins, 730 P.2d at 303). A defendant’s due process right to a fair trial may be implicated when a jury is exposed to information outside of properly admitted evidence. Van Meter, ¶ 12. In determining whether a jury’s exposure to such extraneous information violated a defendant’s right to a fair trial, we ask first whether the information was improperly before the jury and second “whether there is a reasonable possibility that the extraneous information influenced the verdict” to the defendant’s detriment. Id. (quoting People v. Marko, 2015 COA 139, ¶ 31); see also Wiser v. People, 732 P.2d 1139, 1143 (Colo. 1987) (to set aside a verdict on the ground of extraneous influence upon the jury, one must not only establish the fact of improper communication, but also prejudice); Harlan, 109 P.3d at 624 (applying an objective test of 
4 whether there is a “reasonable possibility” that juror misconduct or improper influences affected the verdict). III. Analysis A. Additional Background ¶ 8 Before the jury was empaneled and during a break, Prospective Juror B heard Debusk scream and swear while Debusk was waiting for the elevator in the courthouse. She shared her observations during voir dire: [Prospective Juror B]: I have a really hard time with it because when I was sitting out there at lunch, he was screaming at people and saying he didn’t care what anybody thought. So me sitting out there and the 30 seconds that he was waiting for the elevator totally turned me off . . . . He was swearing at the DA. Defense counsel then asked if any other juror had something similar to share and Juror S, who did not see the tirade near the elevator, spoke up, commenting that, regarding allegations of sexual misconduct, “for kids [not to say] so and so did something to me [is] spiteful.” ¶ 9 Counsel questioned other prospective jurors before returning to Juror S, inquiring whether he would keep an open mind. Juror S responded, “in the time that I’ve sat here, I’ve already started 
5 formulating my own opinion . . . the proof is in the pudding. And if we start second guessing the way we were brought up, then it’s going to be an issue.” When asked to elaborate, Juror S said, about Debusk’s conduct in the courtroom, “I see how your client got upset and rubbed his head. It’s like it doesn’t really matter that he’s here today. Like it’s not a big deal. . . . I want to see the proof.” He then admitted that he would assume Debusk was guilty if Debusk did not mount a defense. ¶ 10 Defense counsel later asked to excuse Juror B based on her observations of Debusk’s conduct near the elevator. The court asked what Juror B witnessed, and defense counsel shared that Debusk “lost his temper and was screaming that he didn’t care what the DA thought or [what] the DA was thinking.” The prosecutor volunteered that he may have been at fault for not avoiding Debusk, as he did not realize Debusk was near the elevator before Debusk created a scene. ¶ 11 While the prosecutor did not believe that Juror B was necessarily disqualified based on her observations of Debusk, the prosecutor agreed that her earlier statements during voir dire about not being able to be fair in cases of rape and sex assault were 
6 sufficient cause to challenge her. The court agreed, excused Juror B, and invited defense counsel to comment on Juror B having shared her observations of Debusk with the venire. Only after the court’s invitation did defense counsel move to strike the panel, suggesting that other jurors may have discussed Juror B’s observations. A prosecutor volunteered that Debusk’s behavior was consistent with his behavior for six months and acknowledged that the victim and the prospective jurors should not be penalized because Debusk chose to scream and swear in a public location. ¶ 12 The court refused to excuse the entire panel based on Debusk’s lack of “power to control himself,” noting that doing so would allow Debusk to sabotage the trial. As for Debusk’s comments, the court observed that “a lot of innocent defendants . . . can still be angry at the Prosecution and in the elevator in the courthouse express that frustration.” ¶ 13 After Juror B was excused, defense counsel asked to excuse Juror S, the second juror to comment on Debusk’s behavior. The prosecution did not object and the court granted the challenge. Jury selection resumed with no further reference to Debusk’s misbehavior. 
7 B. Application of the Law to the Facts ¶ 14 Nothing in the record persuades us that any prospective juror engaged in misconduct. Debusk, however, suggests that Juror B’s exposure to his conduct outside the courtroom infected the rest of the jury. ¶ 15 Even assuming that Juror B’s observations constitute “extraneous information,” that does not end the inquiry. Harlan, 109 P.3d at 624. But see Morgan v. Woessner, 997 F.2d 1244, 1261 (9th Cir. 1993) (declining to grant a new trial because “juror’s observations about sending messages to City Hall and speculation as to the amount of Morgan’s attorney’s fees simply do not constitute the sort of ‘extraneous prejudicial information’ that falls within the scope of Fed. R. Evid. Rule 606(b)”). We next analyze, based upon an “objective ‘typical juror’ standard . . . whether use of that extraneous information posed the reasonable possibility of prejudice to the defendant.” Harlan, 109 P.3d at 624; accord Newman, ¶ 41. Debusk does not clear this hurdle. ¶ 16 The following circumstances persuade us that Debusk cannot show a reasonable possibility of prejudice, Harlan, 109 P.3d at 624: 
8 • The court granted the for-cause challenges to Jurors B and S. • Nothing in the record suggests that Debusk’s behavior prejudiced the rest of the jury venire. The record shows that Debusk’s behavior was only discussed in open court and nothing suggested that any member of the venire other than Juror B witnessed his behavior. See Newman, ¶ 9 (applying an abuse of discretion standard). • Besides challenging Jurors B and S, defense counsel made no record of whether, and how, these two jurors’ observations or assessments affected any other prospective juror. See Richardson v. People, 2020 CO 46, ¶ 25 (defendant must assert a challenge for cause to preserve issue for appeal). Absent evidence that other members of the venire said that their ability to be fair was affected, there are no grounds for the court to have granted a mistrial. See People v. Snider, 2021 COA 19, ¶ 34 (speculative prejudice is not substantial enough to warrant a mistrial); People v. Ned, 923 P.2d 271, 275 (Colo. App. 1996) (speculation of prejudice is insufficient 
9 to warrant reversal of a trial court’s denial of a motion for mistrial). • The court was willing to conduct additional inquiry of Juror B — in or out of the presence of the jury pool — but counsel apparently did not deem it worthwhile to inquire further. As such, we cannot fault the trial court’s decision. See People v. Vigil, 2015 COA 88M, ¶ 10 (Under an abuse of discretion standard, the operative question is “whether the record compelled the trial court to grant the challenge.”), aff’d, 2019 CO 105; see also People v. Gardenhire, 903 P.2d 1165, 1170-71 (Colo. App. 1995) (trial court’s decision not to poll jurors individually was not abuse of its discretion where media reports in question were not inherently prejudicial). • Since Jurors B and S were stricken and because no further inquiry was conducted of the remaining jurors, it is speculative to assume that the entire pool was tainted. See also § 13-71-140, C.R.S. 2021 (“The court shall not declare a mistrial or set aside a verdict based upon allegations of any irregularity in selecting, summoning, 
10 and managing jurors, . . . or based upon any other defect in any procedure performed under this article unless the moving party objects to such irregularity or defect as soon as possible after its discovery and demonstrates specific injury or prejudice.”). • While the prosecution may not comment on a defendant’s silence, there is no prohibition on the jury observing, and evaluating, the demeanor of any witness, including the accused. See People v. Constant, 645 P.2d 843, 846 (Colo. 1982) (The jury may “consider the demeanor of witnesses for credibility purposes.”); People v. Thames, 2019 COA 124, ¶ 33 (prosecution may comment on defendant’s demeanor while answering questions during a recorded interrogation introduced during trial); see also United States v. Velarde-Gomez, 269 F.3d 1023, 1030 (9th Cir. 2001) (while the government may not comment on silence, it may comment on pretrial demeanor). • Debusk’s conduct was self-generated; there is no indication that he was incited to engage in the outburst. 
11 • While distasteful, Debusk’s conduct had no bearing on the charges against him. • The trial court instructed the jury that only evidence presented at trial should be considered, and we must presume the jury understood and followed that instruction. See People v. Stellabotte, 2016 COA 106, ¶ 30, aff’d, 2018 CO 66. • While controverted, the evidence strongly supported the jury’s verdict. In addition to the child victim’s testimony, the prosecution introduced evidence of a pretext call with Debusk, where he admitted to the sexual conduct, and the jury acquitted him of two other charges. ¶ 17 Debusk thus cannot show that the court abused its discretion by declining to grant a mistrial. Wadle, 97 P.3d at 936; Newman, ¶ 9. IV. Conclusion ¶ 18 The judgment is affirmed. JUDGE FREYRE and JUDGE LIPINSKY concur.