The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 31, 2020

## 2020COA174

**No. 17CA1233, *People v. Sauser* — Criminal Law — Trials — Continuance; Evidence — Res Gestae — Character Evidence — Other Crimes Wrongs or Acts — Evidence of Character and Conduct of Witness; Constitutional Law — Fifth Amendment — Right Against Self-Incrimination**

A division of the court of appeals considers for the first time whether a trial court errs by (1) denying a defendant's last-minute request for a continuance to attempt to locate evidence that may not exist and (2) permitting a prosecutor to ask a defendant, in the jury's presence, a question on cross-examination, unrelated to the topics addressed during direct examination, to which the trial court and the prosecutor know the defendant will respond by invoking the right against self-incrimination.  The division holds that the trial court did not err by denying the defendant's motion for continuance.  The division further holds that, although the trial

court erred by allowing the prosecutor to compel the defendant to invoke his right against self-incrimination in front of the jury, the error was harmless. Accordingly, the division affirms the trial court's judgment.

Court of Appeals No. 17CA1233
Larimer County District Court No. 16CR2179
Honorable Stephen E. Howard, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ian Jed Sauser,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Navarro and Tow, JJ., concur

Announced December 31, 2020

Philip J. Weiser, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jacob B. McMahon, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Ian Jed Sauser, appeals from a judgment of conviction entered on a jury verdict finding him guilty of two counts of menacing and one count of aggravated robbery.  Sauser's six appellate arguments include two issues of first impression in this state — whether a trial court abuses its discretion by denying a defendant's last-minute request for a continuance to search for evidence that may not exist, and whether a trial court may allow a prosecutor, in the presence of the jury, to ask a defendant a question on cross-examination, unrelated to any topic addressed during direct examination, that the trial court and the prosecutor know the defendant will respond to by invoking the right against self-incrimination.

¶ 2     We hold that the trial court did not abuse its discretion by denying Sauser's motion for continuance; determine that allowing the prosecutor's question, while improper, constituted harmless error; and disagree with Sauser's other contentions of error.  As a result, we affirm.

## I.     Background

¶ 3     Sauser brandished a distinctive handgun at J.D. and S.M. while the victims were sitting in J.D.'s car in the parking lot of a

1

sports bar. Sauser demanded that J.D. and S.M. hand over "everything that [they] had." Sauser ran off after taking a few dollars.

¶ 4     S.M. told a security guard patrolling the area that Sauser had a gun, took a couple of dollars, asked about drugs, and ran away. The security guard called 911 and searched the property. After spotting Sauser, the security guard pursued him and restrained him until the police arrived.

¶ 5     A police officer took Sauser into custody. The security guard and a police officer searched the property for the distinctive handgun. The security guard found the gun in a dumpster.

¶ 6     Sauser was charged with

1.     aggravated robbery against J.D. in violation of section 18-4-302(1)(b), C.R.S. 2020 (aggravated robbery with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon);

2.     menacing against J.D. in violation of section 18-3-206(1)(a)-(b), C.R.S. 2020;

3.     menacing against S.M. in violation of section 18-3-206(1)(a)-(b);

4.      aggravated robbery against S.M. in violation of section 18-4-302(1)(b);

5.      aggravated robbery against J.D. in violation of section 18-4-302(1)(d) (aggravated robbery with an article used or fashioned in a manner to lead any person reasonably to believe it to be a deadly weapon); and

6.      aggravated robbery against S.M. in violation of section 18-4-302(1)(d).

¶ 7     The jury convicted Sauser of counts 2, 3, 4, and 6, but acquitted him of counts 1 and 5.  At sentencing, the trial court merged count 6 into count 4.  The court sentenced Sauser to ten years in the custody of the Department of Corrections for count 4, three years for count 2, and three years for count 3.  The trial court ordered Sauser to serve the sentences concurrently.

¶ 8     Sauser raises six arguments on appeal.  First, he contends that the trial court reversibly erred by denying his motion for a continuance on the morning of trial.  Second, he asserts that the trial court erred by limiting his testimony in support of his affirmative defense of duress.  Third, Sauser argues that the trial court erred by allowing the prosecutor to ask Sauser, in the

3

presence of the jury, a question allegedly probative of Sauser's character for untruthfulness to which the trial court and the prosecutor knew Sauser would invoke his right against self-incrimination. Fourth, he contends the prosecutor engaged in prosecutorial misconduct. Fifth, he claims that the alleged cumulative errors require reversal. And sixth, he argues that the felony menacing convictions merge into the aggravated robbery conviction.

¶ 9    We affirm.

## II.    Sauser's Motion for a Continuance

¶ 10    Sauser contends that the trial court abused its discretion by denying his request on the morning of trial for a continuance to allow him additional time to marshal potential DNA evidence. Specifically, Sauser argues that, by denying the continuance, the court "effectively prohibited [him] from presenting evidence material to his defense." We disagree.

### A.    Standard of Review

¶ 11    We review the denial of a continuance for an abuse of discretion. *People v. Villano*, 181 P.3d 1225, 1228 (Colo. App. 2008). A trial court abuses its discretion when its denial of a

4

continuance is "arbitrary or unreasonable and materially prejudiced the defendant." *People v. Brown*, 2014 CO 25, ¶ 19, 322 P.3d 214, 219 (quoting *United States v. Simpson*, 152 F.3d 1241, 1251 (10th Cir. 1998)). A defendant must demonstrate actual prejudice to establish that the trial court abused its discretion by denying his or her motion for a continuance. *People v. Pratarelli*, 2020 COA 33, ¶ 39, 471 P.3d 1177, 1184. "Absent an abuse of discretion that results in injustice, the decision to grant a continuance is left to the sound discretion of the trial court." *People v. Scales*, 763 P.2d 1045, 1048 (Colo. 1988).

¶ 12 There are no "mechanical tests" for determining when the denial of a continuance constitutes an abuse of discretion. *People v. Hampton*, 758 P.2d 1344, 1353 (Colo. 1988). Rather, an appellate court must consider the totality of the circumstances and pay particular attention to "the reasons presented to the trial judge at the time the request is denied." *Id.* at 1353-54 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

## B. Additional Facts

¶ 13 Sauser testified that, at the time of the incident in the parking lot, he was acting under duress because J.D. had threatened him

with dire consequences if he did not follow J.D.'s orders. Sauser testified that J.D. had earlier ordered him to get in J.D.'s car and pick up a weapon at Sauser's home. He said he complied with the order because of J.D.'s threats and handed J.D. the distinctive handgun.

### C. The Trial Court Did Not Abuse Its Discretion by Denying Sauser's Last-Minute Motion for a Continuance

¶ 14 At a hearing conducted eight days before trial, defense counsel advised the court there were no pending motions and announced that Sauser was ready for trial. But, on the morning of trial, defense counsel moved for a continuance, claiming he needed more time to investigate possible DNA evidence on the handgun that Sauser had handed to J.D. First, defense counsel said he "wanted to investigate the [handgun] to see *if* there's DNA evidence of another person" on it. (Emphasis added.) Second, assuming the handgun contained DNA evidence, defense counsel said that "one of the alleged victims [i.e., J.D.] had actually had that gun in his possession at one time and . . . his DNA would *probably* appear on that firearm." (Emphasis added.) Defense counsel asserted that

6

Sauser's affirmative defense of duress would be strengthened if the handgun was found to contain DNA evidence.

¶ 15     The prosecutor responded that this was the first time defense counsel had requested DNA testing of the handgun and that a continuance was unwarranted. The prosecutor asserted that, even if testing revealed DNA on the handgun, such evidence would not be determinative of Sauser's coercion theory because "all of the evidence puts the [handgun] in [Sauser's] hand."

¶ 16     The court denied the motion for continuance, noting that defense counsel had made the request for DNA testing "more than a little belatedly," the jury was present in the courthouse, defense counsel had not previously made such a request, and the evidence did not appear essential to the issues in the case.

¶ 17     On appeal, Sauser contends that, by denying his motion for continuance, the trial court deprived him of "an opportunity to develop evidence that would have all but assured his acquittal," citing to *People v. Gagnon*, 703 P.2d 661 (Colo. App. 1985), and *People v. McCabe*, 37 Colo. App. 181, 546 P.2d 1289 (1975). We are not persuaded.

¶ 18    Both *Gagnon* and *McCabe* involved requests for continuance to obtain evidence that indisputably either would soon come into existence or already existed.  In *Gagnon*, the defendant requested a continuance of his trial until a witness's conviction became final so the defense could impeach the witness on cross-examination.  703 P.2d at 662.  The division held that the trial court abused its discretion by not granting the continuance because "the opportunity of the defendant to discredit [the witness's] testimony was an essential part of [the defendant's] case."  *Id.* at 663.

¶ 19    In *McCabe*, the defendant moved for a continuance because "key alibi witnesses who had been scheduled to testify for the defense had unexpectedly proved unable" to travel to Colorado for the trial.  37 Colo. App. at 182, 546 P.2d at 1290.  The division held that the trial court abused its discretion by denying the continuance because the witnesses' "testimony was plainly material and essential to the defense."  *Id.* at 183-84, 546 P.2d at 1291.

¶ 20    The facts in *Gagnon* and *McCabe* are distinguishable from the facts presented here.  Unlike the defendants in those cases, Sauser did not seek a continuance to obtain evidence he knew would soon come into existence or already existed.  Sauser did not know

8

whether the distinctive handgun contained any DNA evidence, much less whether it contained DNA evidence from J.D.  Rather, he sought the continuance in the *hope* of obtaining evidence that might confirm that J.D. had touched the gun.  Defense counsel merely "suspect[ed] there may be DNA evidence on the [handgun]."

¶ 21    Moreover, even if the handgun contained J.D.'s DNA, such evidence would only indirectly and weakly support Sauser's testimony that J.D. coerced him into robbing J.D. and S.M.  The presence of J.D.'s DNA on the handgun would not shed light on *why* J.D. handled the handgun or whether Sauser acted under duress when he pointed the handgun at J.D. and S.M.  (Sauser indeed testified that J.D. coerced him into robbing J.D. and S.M. Sauser responded affirmatively to the prosecutor's question, "You were being threatened by the man sitting on the other side of the [car] door and you have a loaded firearm on you; is that true?" Sauser further testified that "[J.D.] was the sole perpetrator, and he basically was the one who wanted to get value from what was going on.")

¶ 22    Sauser does not point us to, and we have not located, any Colorado case addressing whether a trial court abuses its discretion

by denying a last-minute motion for a continuance to allow the defense to attempt to search for evidence that may not exist. Sauser's counsel merely speculated that the handgun contained J.D.'s DNA — or any DNA evidence, for that matter. Thus, defense counsel did not seek the continuance to obtain evidence he knew would soon come into existence or already existed. Moreover, he did not ask for the continuance to locate evidence that would materially impact the prosecution's ability to disprove his duress theory.

¶ 23    We hold that a trial court does not abuse its discretion by denying a defendant's motion for a continuance on the morning of trial to hunt down new evidence that may not exist, particularly where the potential evidence would not materially impact the prosecution's ability to disprove an affirmative defense. *Cf. Gagnon*, 703 P.2d at 663; *McCabe*, 37 Colo. App. at 183-84, 546 P.2d at 1291.

¶ 24    Thus, we perceive no abuse of discretion in the trial court's denial of Sauser's motion for a continuance.

III.    The Trial Court's Exclusion of Portions of Sauser's Testimony

¶ 25    Sauser next contends that the trial court abused its discretion by excluding portions of his testimony (the excluded testimony) that he argues supported his duress defense.  Sauser argues that, by disallowing the excluded testimony, the trial court deprived him of his constitutional right to present a defense.  We disagree.

¶ 26    We first turn to Sauser's evidentiary arguments concerning the trial court's ruling on the excluded testimony.  In Part III.E, we address his argument that the ruling also violated his constitutional right to present a defense.

A.    Standard of Review

¶ 27    We review a trial court's evidentiary rulings for an abuse of discretion.  *People v. Quintana*, 882 P.2d 1366, 1371 (Colo. 1994).  And "we review nonconstitutional trial errors that were preserved by objection for harmless error."  *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119; *Tevlin v. People*, 715 P.2d 338, 341 (Colo. 1986).  The parties agree that Sauser preserved his objections to the trial court's ruling on the excluded testimony.

## B.     Additional Facts

¶ 28     Sauser elected to testify in his own defense.  He testified that, when he and a friend went to J.D.'s house, J.D. "greeted them" angrily and wielded a metal baseball bat.  The prosecutor objected and the court asked the parties to approach.

¶ 29     During the sidebar conference, defense counsel told the court that Sauser would testify that J.D. threatened him with a baseball bat and a saw blade while Sauser was at J.D.'s house.  He said Sauser would further testify that J.D. demanded that Sauser rob S.M. and threatened that, if Sauser refused to follow J.D.'s orders, J.D.'s friends and family, who were members of a "cartel," would hurt Sauser, his friends, and his family.  The court sustained the objection regarding the statements concerning the baseball bat and saw blade.

¶ 30     The court then requested a proffer of Sauser's testimony out of the jury's presence.  During the proffer, Sauser said that, when he and his friend were at J.D.'s house, J.D. claimed that drugs were missing from the house and accused them of stealing the drugs.  Sauser further said that J.D. made Sauser and his friend search for the allegedly missing drugs at his friend's house.

¶ 31    After the proffer of Sauser's testimony, the court ruled that

Sauser's testimony "about being threatened about missing drugs,"

like the testimony about the baseball bat and saw blade, was

inadmissible.  Although the court's ruling primarily rested on CRE

404(b), the court also referred to relevance, res gestae, and hearsay:

> I have a great deal of concern about whether
> any of his testimony would be relevant in any
> way. . . .  I'm going to rule inadmissible
> testimony about being threatened about
> missing drugs.  I do think that's 404(b).  I do
> think . . . there was no 404(b) notice.  I don't
> think it should be allowed.  I think that to the
> extent there is relevance — and there may be
> some minimal relevance to the case at hand —
> that it's certainly outweighed by the danger of
> unfair prejudice.
>
> The issue then becomes at what point does it
> — are we really dealing with this particular
> incident or the res gestae of this particular
> incident?  I do think it's — there are a lot of
> hearsay statements in here, and I guess the
> issue is that I need to resolve how much of
> that is really being offered for a purpose other
> than the truth of the matter asserted.

¶ 32    The court did not exclude the entirety of Sauser's testimony

about his encounters with J.D., however.  The court allowed Sauser

to testify that

- he returned to J.D.'s house without his friend;

13

- when he was at J.D.'s house, J.D. pulled out a handgun and demanded that Sauser pick up a weapon at Sauser's home;

- after Sauser retrieved his father's distinctive handgun from his home, J.D. ordered Sauser to give it to him and that, when Sauser handed over his father's handgun, J.D. had two handguns;

- Sauser went to the sports bar with J.D. in J.D.'s car, as J.D. ordered;

- J.D. told Sauser to wait outside the bar, that someone was watching him, and that if he attempted to leave, he would be "cut out";

- outside the bar, J.D. returned the distinctive handgun to Sauser and told him to wait for S.M. to pull up; walk up to the driver's side window of J.D.'s car, where J.D. and S.M. would be sitting; and ask for everything he and S.M. had;

- J.D. claimed his family was "cartel-related"; and

14

- Sauser felt threatened by J.D. and that he had to "follow through with anything [J.D.] was telling [him] to do for the sake of [Sauser's] family and [his] friends."

¶ 33    We first analyze the trial court's evidentiary ruling through the lens of the res gestae doctrine because Sauser contends that the excluded testimony was admissible res gestae evidence.  Second, we review whether the court correctly decided that the excluded testimony was inadmissible under CRE 404(b), on which the court primarily rested its decision.

### C.    Res Gestae

#### 1.    Applicable Law

¶ 34    Res gestae is evidence that is "generally linked in time and circumstances with the charged crime, forms an integral and natural part of an account of a crime, or is necessary to complete the story of the crime for the jury." *People v. Greenlee*, 200 P.3d 363, 368 (Colo. 2009) (quoting *Quintana*, 882 P.2d at 1373).  Res gestae provides "the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Yachik*, 2020 COA

100, ¶ 23, 469 P.3d 582, 587 (quoting *People v. Martinez*, 24 P.3d 629, 633 (Colo. App. 2000)).

¶ 35     Res gestae evidence is admissible "if it is relevant and if its probative value is not substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 24, 469 P.3d at 587; *see* CRE 403. (Our supreme court recently agreed to review the continued viability of the res gestae doctrine in this state. *See Rojas v. People*, No. 20SC399, 2020 WL 5997143 (Colo. Oct. 6, 2020) (unpublished order) (granting certiorari to decide, in part, whether the court "should abolish the res gestae doctrine"). We analyze the res gestae issue under the law as it currently stands, however, because we are bound by the Colorado precedent applying the doctrine and neither party challenges the viability of the doctrine.)

### 2.     Analysis

¶ 36     Sauser argues that the excluded testimony was admissible res gestae evidence for two reasons. First, he contends it provided context for the alleged robbery. Second, he argues the jury could not fairly evaluate Sauser's duress defense without hearing about J.D.'s specific threats against him.

16

¶ 37    As noted above, the trial court briefly mentioned res gestae when determining whether the excluded testimony was admissible. To the extent the trial court analyzed the excluded testimony as res gestae, we discern that the trial court found that the excluded testimony was not res gestae because it was not generally linked in time or circumstances to the incident in the parking lot. Specifically, the trial court concluded that the excluded testimony concerned a "separate incident" from the incident in the parking lot.

¶ 38    The court characterized the two incidents as "drug issues." According to the court, the first "drug issue" involved "the alleged missing drugs." The court said the second "drug issue" was "the setup with S.M. or to try to get drugs from [S.M.]." The court clarified that J.D.'s initial threats were part of the first "drug issue" and were separate from the "drug issue" involving the incident in the parking lot.

¶ 39    Based on the trial court's explanation for its ruling on the excluded testimony, we hold that the trial court did not abuse its discretion by deciding that the excluded testimony was not admissible res gestae. Under the res gestae doctrine, a separate incident is one that is not "generally linked in time and

17

circumstances with the charged crime." *Greenlee*, 200 P.3d at 368 (quoting *Quintana*, 882 P.2d at 1373); *see also People v. Trujillo*, 2014 COA 72, ¶ 69, 338 P.3d 1039, 1051 ("Other act evidence differs from res gestae evidence because it 'generally occurs at different times and under different circumstances from the charged offense.'" (quoting *Quintana*, 882 P.2d at 1372)).

¶ 40    The trial court also considered whether, for purposes of the res gestae analysis, the danger of unfair prejudice outweighed the probative value of the excluded testimony. After the trial court explained that the excluded testimony involved a "separate incident," the trial court said that, "to the extent [the excluded testimony is] relevant, . . . the relevance is outweighed by the danger of unfair prejudice."

¶ 41    The court apparently determined that, if the jury heard the excluded testimony, it might hand down a verdict based on animus against J.D. — one of the alleged victims — due to J.D.'s possession of drugs, the handgun, and the saw blade. Further, the evidence that J.D. possessed those items, even if relevant, was only minimally probative of whether J.D. had forced Sauser to rob him and S.M. At most, it had only a slight tendency to make the

18

existence of the facts underlying Sauser's duress defense "more probable or less probable than [they] would be without the evidence." CRE 401; *see People v. Skufca*, 176 P.3d 83, 86 (Colo. 2008) ("To be admissible, res gestae evidence must also be relevant under CRE 401, which means that it must tend to 'make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'").

¶ 42 Further, we disagree with Sauser's argument that the trial court's ruling on the excluded testimony effectively barred him from presenting his affirmative defense of duress. As noted above, the trial court permitted Sauser to tell the jury about several of J.D.'s threats, including the threats that, according to Sauser, coerced him into retrieving the distinctive handgun, giving the handgun to J.D., accompanying J.D. to the sports bar, and demanding money from S.M. and J.D. while they sat in J.D.'s car. The jury thus heard sufficient evidence to find that Sauser acted under duress in complying with J.D.'s orders — if the jury believed Sauser's testimony.

¶ 43 Thus, even if the excluded testimony was res gestae evidence, it was inadmissible because its prejudicial effect substantially

outweighed its minimal probative value.  *See* CRE 403; *see also*
*Yachik*, ¶ 24, 469 P.3d at 587; *People v. Gladney*, 250 P.3d 762, 768
(Colo. App. 2010).

¶ 44     We therefore conclude that the trial court did not abuse its
discretion by holding that the excluded testimony was not
admissible as res gestae evidence.

### D.     Colorado Rule of Evidence 404(b)

#### 1.     Applicable Law

¶ 45     In contrast to res gestae evidence, "'[o]ther act' evidence . . .
generally occurs at *different* times and under *different*
circumstances from the charged offense."  *Quintana*, 882 P.2d at
1372 (emphasis added).  CRE 404(b) provides:

> Evidence of *other* crimes, wrongs, or acts is not
> admissible to prove the character of a *person*
> in order to show that he acted in conformity
> therewith.  It may, however, be admissible for
> other purposes, such as proof of motive,
> opportunity, intent, preparation, plan,
> knowledge, identity, or absence of mistake or
> accident, provided that upon request by the
> accused, the prosecution in a criminal case
> shall provide reasonable notice in advance of
> trial . . . .

(Emphasis added.)

¶ 46     A trial court must apply a four-part test before determining that evidence of other crimes, wrongs, or acts is admissible under CRE 404(b). *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990). The trial court must determine that (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the intermediate inference that the person was acting in conformity with his bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *Id.* "'[E]vidence is properly designated' as other act evidence if it 'involves a separate and distinct episode wholly independent from the offense charged,' even if it is 'similar in nature' to the charged offense." *Trujillo*, ¶ 69, 338 P.3d at 1051 (quoting *Quintana*, 882 P.2d at 1372).

2.    Analysis

¶ 47     As noted above, the trial court analyzed the excluded testimony under CRE 404(b) after finding it could not be res gestae evidence because it concerned a separate "drug incident" from the "drug incident" in the parking lot.

¶ 48     Although Sauser contends that CRE 404(b) only bars other act evidence that could prejudice the jury against the defendant, CRE

21

404(b) is not limited to evidence of the *defendant's* other acts.  It also allows courts to exclude evidence that could prejudice the jury against other persons.  *See People v. Harris*, 892 P.2d 378, 381 (Colo. App. 1994) ("[S]ince the plain language of CRE 404(b) refers to character evidence of a 'person,' it cannot be construed only to apply to the prior acts of an 'accused.'").  "CRE 404(b) is not, on its face, limited to evidence offered by the prosecution regarding similar acts committed by the defendant."  *People v. Elmarr*, 2015 CO 53, ¶ 36, 351 P.3d 431, 440.  Although we apply a "more lenient standard of admissibility" for a defendant's other act evidence than for prosecution-proffered other act evidence, "CRE 404(b) principles have guided this case-by-case analysis — if not expressly, then at least implicitly."  *Id.* at ¶ 39, 351 P.3d at 441.

¶ 49    Even if CRE 404(b) applies to potential prejudice against nonparty witnesses, Sauser argues that CRE 404(b) is inapplicable because he did not offer the excluded testimony to impugn J.D.'s character or suggest that J.D. acted in conformity with a bad character, but, rather, to "explain[] why J.D. coerced Sauser into committing a robbery."

¶ 50    The trial court's analysis of the admissibility of the excluded testimony under CRE 404(b) and the *Spoto* test largely overlapped with its analysis of the excluded testimony under the res gestae rubric.  As explained above, in considering whether the excluded testimony was admissible under the res gestae doctrine, the trial court found that it was, at most, minimally probative of whether Sauser had acted under duress in the parking lot.  Similarly, in conducting its CRE 404(b) and *Spoto* analysis, the trial court found that the excluded testimony did not relate to a material fact and was minimally relevant, if relevant at all.

¶ 51    The prosecutor argued that Sauser's testimony about the allegedly missing drugs and baseball bat involved earlier threats that J.D. had allegedly made to Sauser and, thus, was not admissible to prove that J.D. acted in conformity with those threats at the time of the incident in the parking lot.  The trial court agreed, holding that Sauser's testimony regarding the threats involving the baseball bat and saw blade was inadmissible other act evidence.

¶ 52    The court acknowledged that all the events "surrounding the actual incident at [the sports bar]" were not "entirely unrelated," but found that evidence of the earlier threats was inadmissible because

23

it was "sufficiently attenuated" from the incident in the parking lot. As noted above, the trial court found that Sauser's testimony regarding J.D.'s possession of drugs, the handgun, and the saw blade was, at most, only minimally probative of whether Sauser had acted under duress when he brandished the gun at J.D. and S.M. and demanded money from them. Further, the trial court found that the danger of unfair prejudice outweighed the minimal probative value of the excluded testimony.

¶ 53 For these reasons, we are unpersuaded that the trial court based its finding that the excluded testimony was inadmissible under CRE 404(b) on "an erroneous view of the law or a clearly erroneous assessment of the evidence." *People v. Rojas*, 2020 COA 61, ¶ 15, ___ P.3d ___, ___ (*cert. granted* Oct. 6, 2020).

¶ 54 In light of our holding that the trial court did not abuse its discretion by ruling that the excluded testimony was inadmissible under CRE 404(b), we need not address Sauser's contention that the trial court erred by holding that the excluded testimony was also inadmissible because Sauser had not given the prosecution notice of the testimony under CRE 404(b). *See* CRE 404(b) ("provided that upon request by the accused, the *prosecution* in a

criminal case shall provide reasonable notice in advance of trial") (emphasis added).

### E.   Sauser's Argument Regarding His Constitutional Right to Present a Defense

¶ 55    Sauser alternatively contends that the trial court violated his constitutional right to present a complete defense by not allowing him to present the excluded testimony.  (Sauser's argument refers to his constitutional rights to testify, present a complete defense, and due process.  These arguments involve a single issue, however — whether the trial court erred by barring Sauser from presenting his affirmative defense of duress.)  Sauser asserts that we should review the trial court's decision on the excluded testimony for constitutional harmless error.

¶ 56    We agree with the People, however, that Sauser did not preserve his constitutional argument.  Sauser did not raise any constitutional issues when arguing for the admissibility of the excluded testimony, nor did he present the trial court with an opportunity to address any constitutional issues involving such evidence.  *See People v. Short*, 2018 COA 47, ¶ 53, 425 P.3d 1208,

1222.  In any event, we hold that the trial court did not preclude Sauser from presenting his duress defense.

¶ 57 "[T]he standard or test for assessing whether a defendant's right to confront or present a defense has been violated by evidentiary rulings is clearly dependent upon the extent to which he was permitted to subject the prosecutor's case to 'meaningful adversarial testing.'" *Krutsinger v. People,* 219 P.3d 1054, 1062 (Colo. 2009) (quoting *Crane v. Kentucky,* 476 U.S. 683, 691 (1986)). Thus, the right to present a defense is violated only when a defendant "was denied virtually his only means of effectively testing significant prosecution evidence." *Id.* But "the right to present a defense is not absolute; the Constitution requires only that the accused be permitted to introduce all relevant and admissible evidence." *People v. Salazar,* 2012 CO 20, ¶ 17, 272 P.3d 1067, 1071.

¶ 58 Sauser was not deprived of his ability to present a defense. As explained in Part III.D.2, the trial court's ruling on the excluded testimony did not improperly limit Sauser's ability to present his affirmative defense of duress. Rather, the court permitted Sauser to present evidence supporting every element of duress.

¶ 59    The court's instruction on duress stated:

> The defendant's conduct was legally authorized if:
>
> 1. he engaged in the prohibited conduct at the direction of another person, because of the use or threatened use of unlawful force upon him, and
>
> 2. a reasonable person in his situation would have been unable to resist the use or threatened use of unlawful force, and
>
> 3. he did not intentionally or recklessly place himself in a situation where it was foreseeable that he would be subjected to the use or threatened use of unlawful force.

Sauser provided the jury with evidence that, if the jury believed it, supported each of these elements.

¶ 60    We disagree with Sauser's argument that the court's ruling left him "with a story that made no sense." Evidence of J.D.'s previous threats and the allegedly missing drugs would have expanded on Sauser's duress narrative, but was not necessary to make it coherent. The court allowed the jurors to hear testimony regarding the facts leading up to the incident in the parking lot and that Sauser felt scared and threatened if he did not accede to J.D.'s demands. Therefore, the court's ruling on the excluded testimony did not deprive Sauser of "virtually his only means" of effectively

27

presenting a duress affirmative defense.  *See Krutsinger*, 219 P.3d at 1062.

IV.   The Prosecutor's Question Regarding Sauser's False Statement to a Member of the State Patrol

¶ 61   Sauser contends that the trial court abused its discretion by allowing the prosecutor to ask Sauser a question to which the trial court and the prosecutor knew Sauser would respond by invoking his right against self-incrimination in front of the jury.  While we agree that the trial court abused its discretion by permitting the prosecutor to ask Sauser such a question, we conclude that the error was harmless.

A.   Additional Facts

¶ 62   On cross-examination, in the presence of the jury, the prosecutor asked Sauser a question allegedly probative of Sauser's character for untruthfulness: "[Y]ou were involved with a motor vehicle crash and lied to the state patrol and gave them your brother's name, didn't you?"  Sauser had not testified on direct examination about the crash or any issue relating to the crash — the prosecutor's question did not concern a subject addressed during direct examination.

28

¶ 63 The court held a bench conference after defense counsel objected based on relevance. The prosecutor acknowledged that the question involved an ongoing criminal charge but argued that the question was nonetheless proper under CRE 608(b) as probative of Sauser's character for untruthfulness. The court ruled that it would allow the question. Defense counsel objected again and raised the issue of Sauser's right against self-incrimination.

¶ 64 The court permitted defense counsel to confer with Sauser about the privilege against self-incrimination but reiterated it would allow the question because Sauser's credibility was at issue. Defense counsel again said that Sauser would assert his right against self-incrimination if asked the question.

¶ 65 When the jury returned, the prosecutor, knowing that Sauser would respond by invoking his right against self-incrimination, asked, "[W]hen you were contacted by the state patrol, you gave them misleading information, your brother's name, correct?" Sauser answered, "On the grounds that this is a pending case, I'm going to plead the Fifth Amendment."

## B.    Standard of Review

¶ 66    Although Sauser suggests that the trial court's decision to allow the prosecutor's question violated his constitutional right against self-incrimination, he primarily challenges the decision as an abuse of discretion in admitting evidence under CRE 608(b). Accordingly, we review Sauser's argument as an evidentiary issue. *See People v. Flockhart*, 2013 CO 42, ¶ 20, 304 P.3d 227, 233 ("Only those errors 'that specifically and directly offend a defendant's constitutional rights are "constitutional" in nature.'") (citations omitted); *see also People v. Lowe*, 969 P.2d 746, 748 (Colo. App. 1998) ("Cross-examination in an effort to impeach the defendant does not violate his or her Fifth Amendment privilege against self-incrimination."). We apply the abuse of discretion standard when reviewing a trial court's decision to allow an inquiry into specific conduct under CRE 608(b). *People v. Caldwell*, 43 P.3d 663, 670 (Colo. App. 2001); *see State v. Culkin*, 35 P.3d 233, 246-47 (Haw. 2001) (applying the abuse of discretion standard in holding that the trial court erred by allowing the prosecutor to elicit the defendant's invocation of his right against self-incrimination six times in the presence of the jury).

## C. Applicable Law

¶ 67 The United States and Colorado Constitutions protect the privilege against self-incrimination. *See* U.S. Const. amend. V; Colo. Const. art. II, § 18; *see also Skufca*, 176 P.3d at 85. A defendant waives the privilege by electing to testify. *People v. McKeel*, 246 P.3d 638, 640 (Colo. 2010). CRE 608(b), however, allows a defendant to invoke the privilege against self-incrimination in response to questions about prior specific acts that relate only to the character for truthfulness.

¶ 68 "Neither the prosecution nor the defense . . . has the right to deliberately and unfairly benefit from any speculative inferences the jury might draw simply from a witness' assertions of the privilege." *People v. Dikeman*, 192 Colo. 1, 4, 555 P.2d 519, 521 (1976). The prosecution "may not call a witness to testify before the jury if it knows that the witness will claim his privilege against self-incrimination." *Id.* at 3, 555 P.2d at 520.

> Otherwise, the refusal of a prosecution witness to answer certain questions on the ground of self-incrimination could improperly prejudice the defendant because it might be interpreted by the jury as implying the defendant's guilt. Moreover, by so inducing the jury to speculate on matters not in evidence, the prosecutor

> could manufacture an inference of guilt which could not be removed by the defendant through further questioning of the 'mute' witness. Fundamental fairness therefore prohibits a prosecutor from knowingly using a witness' claim of privilege to the prosecution's advantage.

*Id.* (citation omitted); *see also Battenfield v. State*, 816 P.2d 555, 560 ("Under Section 3–5.7(c) of *The ABA Standards for Criminal Justice, The Prosecution Function* (1980), '[a] prosecutor should not call a witness who the prosecutor knows will claim a valid privilege not to testify for the purpose of impressing upon the jury the fact of the claim of privilege . . . .'"). There is no meaningful distinction between calling a witness to compel him or her to invoke the right against self-incrimination in front of the jury, and asking the witness, on cross-examination in the jury's presence, a question unrelated to the topics addressed during direct examination that the prosecutor knows will result in the witness's invocation of the right against self-incrimination.

¶ 69    CRE 608(b) grants trial courts the discretion to allow on cross-examination inquiry into specific instances of prior conduct that are probative of the witness's character for truthfulness or untruthfulness. A trial court may exclude evidence otherwise

32

admissible under CRE 608(b) if its probative value is substantially outweighed by the countervailing considerations set forth in CRE 403. *See People v. Segovia,* 196 P.3d 1126, 1132 (Colo. 2008); *see also* CRE 403.

¶ 70     In addition, CRE 608(b) specifically permits a prosecutor to cross-examine a defendant about a specific instance where the defendant provided false information to law enforcement. *People v. Gillis,* 883 P.2d 554, 561-62 (Colo. App. 1994). A pending criminal charge against a witness, however, is an improper subject for impeachment. *People v. Pratt,* 759 P.2d 676, 682 (Colo. 1988). A trial court generally should "exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, or has the potential to confuse the jury." *People v. Knight,* 167 P.3d 147, 153 (Colo. App. 2006).

## D.     Analysis

¶ 71     During the bench conference, defense counsel advised the trial court that Sauser would assert his privilege against self-incrimination if the prosecutor asked him whether he gave misleading information to the state patrol in the unrelated case. Although the trial court properly recognized that Sauser's credibility

was at issue and that the question concerned Sauser's character for truthfulness, the court, like the prosecutor, knew Sauser would respond to the question by invoking his right against self-incrimination.

¶ 72     We therefore conclude the trial court abused its discretion by allowing the prosecutor to ask Sauser on cross-examination, in the presence of the jury, a question unrelated to any topic covered on direct examination that the trial court and the prosecutor knew Sauser would respond to by invoking his right against self-incrimination. *See Dikeman*, 192 Colo. at 4, 555 P.2d at 520 ("The fundamental point is that the exercise of the privilege is not evidence to be used in the case *by any party* . . . ." (quoting *State v. Smith*, 446 P.2d 571, 581 (1968))); *see also People v. Frierson*, 808 P.2d 1197, 1203 (Cal. 1991) ("Allowing a witness to be put on the stand to have the witness exercise the privilege before the jury would only invite the jury to make an improper inference.").

¶ 73     Although the trial court abused its discretion, we conclude the error was harmless for two reasons.

¶ 74     First, although Sauser argues that the prosecutor asked him about a pending criminal charge, the prosecutor's question did not

34

refer to a criminal charge. As noted above, the prosecutor asked Sauser whether he had provided misleading information to a member of the state patrol. The question did not refer to a pending charge or suggest that providing misleading information to a member of the state patrol is a criminal offense. Rather, in response to the question, Sauser volunteered that "this is a pending case." *See Gillis*, 883 P.2d at 561-62. Sauser, not the prosecutor, informed the jury that he was facing criminal charges in another case.

¶ 75 Second, the jury heard only a single, fleeting reference to the right against self-incrimination — when Sauser responded to the prosecutor's question. *Cf. Culkin*, 35 P.3d at 246-47. After Sauser invoked his right against self-incrimination, the prosecutor did not refer to the issue again. In his closing argument, the prosecutor said nothing about Sauser's invocation of the right against self-incrimination. *See State v. Feaster*, 716 A.2d 395, 433 (N.J. 1998) (highlighting, in affirming the conviction, the "fleeting nature of the reference to defendant's invocation of his right to counsel").

¶ 76 We also note that the defense did not request a cautionary instruction after Sauser referred to his right against self-

35

incrimination.  *See id.*  Although Sauser refers to a limiting instruction in his opening brief, he does not contend that the lack of a cautionary instruction constituted plain error.  Sauser's trial counsel may have made the strategic decision not to request a cautionary instruction to avoid drawing special attention to Sauser's invocation of his right against self-incrimination.  *See People v. Gladney*, 194 Colo. 68, 72, 570 P.2d 231, 234 (1977) ("Defense counsel, for strategic or tactical reasons, may consider that such an instruction would be more harmful than beneficial.  For example, it might tend to draw special attention to the evidence, thus giving it greater emphasis and jury impact than it would have had if left alone."); *Frierson*, 808 P.2d at 1204 ("Any benefit of a cautionary instruction is 'debatable' in that it may tend to highlight the fact it was intended to minimize.").  For these reasons, although the trial court abused its discretion by allowing the prosecutor to ask Sauser on cross-examination, in front of the jury, a question unrelated to the topics covered in direct examination to which the trial court and the prosecutor knew Sauser would respond by invoking his right against self-incrimination, we conclude that the error was harmless.  We therefore discern no basis for reversal.

## V. Prosecutorial Misconduct

¶ 77 Sauser contends that the prosecutors engaged in three instances of prosecutorial misconduct: (1) compelling Sauser to invoke his right against self-incrimination in the presence of the jury; (2) using a puzzle analogy to explain reasonable doubt; and (3) repeatedly telling the jury that Sauser's testimony was a "story." We are not persuaded that the prosecutors' actions constituted prosecutorial misconduct.

### A. Standard of Review

¶ 78 We engage in a two-step analysis when reviewing claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* "We review a trial court's ruling on prosecutorial misconduct for 'a gross abuse of discretion resulting in prejudice and a denial of justice.'" *People v. Camarigg*, 2017 COA 115M, ¶ 39, ___ P.3d ___, ___ (quoting *People v. Garner*, 2015 COA 175, ¶ 26, 439 P.3d 4, 11). Second, we determine "whether such actions warrant reversal according to the proper standard of review." *Wend*, 235 P.3d at 1096.

¶ 79     Where the defense did not object to the prosecutorial misconduct, the proper standard of review is plain error. *Id.* at 1097. "An error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Rediger*, 2018 CO 32, ¶ 48, 416 P.3d 893, 903.

¶ 80     In contrast, where a defendant objected to a prosecutor's improper statements that did not raise a constitutional issue, the proper standard of review is harmless error. *People v. Bowles*, 226 P.3d 1125, 1132 (Colo. App. 2009). "Under this standard, reversal is required only if the error affects the substantial rights of the parties" by substantially influencing the verdict or affecting the fairness of the trial. *Hagos*, ¶ 12, 288 P.3d at 119.

¶ 81     Each step in the harmless error analysis is independent. *Wend*, 235 P.3d at 1096. "Thus, an appellate court could find a prosecutor's conduct improper, but it could uphold the trial court's verdict because the errors were harmless." *Id.*

### B.     The Right Against Self-Incrimination

¶ 82     Sauser asserts that the prosecutor engaged in misconduct necessitating reversal by compelling Sauser to invoke his right

against self-incrimination in front of the jury. We disagree that the prosecutor's question that led to Sauser's invocation of his right against self-incrimination was reversible error, even if it constituted prosecutorial misconduct.

¶ 83 The parties have not cited a Colorado case directly addressing whether it is misconduct for a prosecutor to compel a defendant to assert his right against self-incrimination in front of the jury on cross-examination, in response to a question concerning a topic not covered during direct examination, nor has our research uncovered one. As discussed in Part IV.D, while a prosecutor may cross-examine a defendant regarding specific instances of prior conduct that are probative of the witness's character for truthfulness or untruthfulness, *Gillis*, 883 P.2d at 561-62; *see* CRE 608(b), a prosecutor may not call a witness for the purpose of forcing him or her to invoke the right against self-incrimination in front of the jury. *See De Gesualdo v. People*, 147 Colo. 426, 429-33, 364 P.2d 374, 376-78 (1961). Because defense counsel objected to the prosecutor's question that Sauser responded to by invoking his right against self-incrimination, we review for harmless error. *Bowles*, 226 P.3d at 1132.

¶ 84    For the reasons discussed in Part IV.D, we are unpersuaded

that the question that resulted in Sauser's invocation of the right

against self-incrimination influenced the verdict or affected the

fairness of the trial.  After Sauser responded to the prosecutor's

question, the jury never again heard about the right against self-

incrimination.  Thus, we hold that, even if it was misconduct for the

prosecutor to ask Sauser a question to which the prosecutor knew

Sauser would respond with an assertion of his right against self-

incrimination, the question does not require reversal.  *See Hagos*,

¶ 12, 288 P.3d at 119.

### C.    Puzzle Analogy

¶ 85    Sauser next asserts that the prosecutors engaged in

misconduct by improperly comparing the reasonable doubt

standard to an incomplete jigsaw puzzle.  We do not discern

reversible error.

### 1.    Additional Facts

¶ 86    During voir dire, the prosecutor analogized the reasonable

doubt standard to a puzzle:

> Now, reasonable doubt is not vague, it is not
> speculative or imaginary. . . .  It's your job to

use reason and common sense. Does it make sense to you?

Now, my — my grandmother used to buy me those 5,000-piece puzzles. I know some of you probably got those. You're shaking your head. Let's say you get that box . . . and all it is, it's — it drives you crazy when you get it, because it's a dolphin with about 4,000 pieces of water around it. Right? So you know you're going to be looking at a hundred different shades of blue. So you go through and you put together this puzzle, and you get done and you're missing 15, 20 pieces. Can you step back and look at the big picture and tell me what that puzzle is? Right? Probably a dolphin, isn't it?

And I bring that example up . . . because I like to equate that to reasonable doubt. There may still be a question here; there still may be a piece here. And like I said, I don't have to prove everything. I might not have to put all 5,000 pieces of that puzzle together, but I'm asking you to use common sense, take a step back, and look at the big picture. Do you think you can do that . . . ?

¶ 87    Another member of the prosecution team referenced the puzzle analogy in closing argument by stating, "[Y]ou might not have every single piece, but missing a couple pieces isn't reasonable doubt." Defense counsel did not object to the puzzle analogy either during voir dire or during closing argument.

## 2. Applicable Law

¶ 88     Lawyers and trial courts should avoid using analogies when explaining the concept of reasonable doubt to a jury. *See People v. Knobee*, 2020 COA 7, ¶¶ 18, 45, ___ P.3d ___, ___ (concluding that the trial court improperly instructed the jury on reasonable doubt by analogizing the reasonable doubt standard to buying a home or choosing doctors) (*cert. granted* June 29, 2020); *see also People v. Vialpando*, 2020 COA 42, ¶¶ 112-115, ___ P.3d ___, ___ (Fox, J., concurring in part and dissenting in part) (assuming that the prosecutor's analogy of a folded American flag to describe reasonable doubt was improper, but concluding it was not plain error) (*cert. granted* Oct. 12. 2020).

¶ 89     Divisions of this court have specifically held that prosecutors should avoid using puzzle analogies when explaining reasonable doubt to a jury. *See People v. Van Meter*, 2018 COA 13, ¶¶ 31-34, 421 P.3d 1222, 1230-31 (holding that "the prosecutor's use of a puzzle analogy, including the display of an incomplete puzzle of the iconic and easily recognizable space shuttle image, was improper"). Nonetheless, a prosecutor's use of a puzzle analogy, without more, does not require reversal or rise to the level of plain error. *See also*

*Camarigg*, ¶¶ 44-47, 53, ___ P.3d at ___ (holding that "any impropriety in the prosecutor's analogy was harmless beyond a reasonable doubt"); *People v. Carter*, 2015 COA 24M-2, ¶¶ 50, 55-61, 402 P.3d 480, 490-92 (holding that the trial court's and the prosecutor's use of puzzle analogies, even if improper, did not constitute plain error).

¶ 90    Puzzle analogies can be problematic if they (1) "quantify the concept of reasonable doubt"; (2) "inappropriately trivialize the state's burden"; (3) "equate the burden of proof to an everyday choice"; or (4) "use iconic images, which invite the jury to jump to a conclusion about a defendant's guilt." *Camarigg*, ¶¶ 44-47, ___ P.3d at ___.

¶ 91    We find *Carter* particularly instructive.  In that case, the trial court analogized the reasonable doubt standard to an incomplete jigsaw puzzle in a jury instruction given during voir dire and, in addition, the prosecution employed the puzzle analogy during closing arguments.  *Carter*, ¶¶ 54, 56, 402 P.3d at 491.  The division reviewed for plain error because the defense counsel did not object to the court's instructions or the prosecutor's statements.  *Id.* at ¶ 56, 402 P.3d at 491.  The division noted that "[t]he trial

43

court verbally instructed the jury twice on the definition of reasonable doubt . . . and also provided final written instructions" containing the correct definition. *Id.* at ¶ 59, 402 P.3d at 492. It further said that "the prosecutor's use of the puzzle analogy was relatively brief and isolated." *Id.* at ¶ 60, 402 P.3d at 492. We reach a similar conclusion in this case.

### 3.    Analysis

¶ 92    Even assuming the prosecutors' use of the puzzle analogy constituted misconduct, it was not plain error.

¶ 93    Here, the prosecutors referred to the puzzle analogy only briefly during voir dire and closing argument. *See id.* The trial court properly instructed the jury on the state's burden of proof and the definition of reasonable doubt during voir dire and in the instructions it read to the jury before deliberations. *See id.* at ¶ 59, 402 P.3d at 492.

¶ 94    Moreover, the failure of Sauser's counsel to object to the analogy may indicate his counsel did not believe it was overly damaging. *People v. Villa,* 240 P.3d 343, 356 (Colo. App. 2009) ("The fact that the defendant did not object to the remarks may indicate his belief that the live argument was not overly

damaging."). And, as noted above, the Colorado appellate courts have not previously held that a prosecutor's use of a puzzle analogy to explain reasonable doubt alone results in plain error.

¶ 95 In any event, although the decisions cited above indicate that a prosecutor's use of a puzzle analogy to explain reasonable doubt may be an "obvious" error, the use of the analogy was not so grave an error that it undermined the fundamental fairness of the trial so as to cast serious doubt on Sauser's convictions. *See People v. Ujaama,* 2012 COA 36, ¶ 43, 302 P.3d 296, 305; *see also People v. Constant,* 645 P.2d 843, 847 (Colo. 1982) ("Unless a prosecutor's misconduct is flagrant or 'glaringly or tremendously' improper, it is not plain error under Crim. P. 52(b) . . . ." (quoting *People v. Simbolo,* 188 Colo. 49, 53, 532 P.2d 962, 964 (1975))).

¶ 96 Moreover, Sauser does not contend that the trial court incorrectly instructed the jury on the meaning of reasonable doubt. We must presume, in the absence of evidence to the contrary, that the jury followed the court's instruction. *See Carter,* ¶ 59, 402 P.3d at 492.

¶ 97 We therefore conclude that the prosecutors' use of the puzzle analogy was not plain error.

45

D. Testimony Characterized as a "Story"

¶ 98 Sauser next asserts that the prosecutors engaged in misconduct by characterizing his testimony as a "story." We are not persuaded.

1. Additional Facts

¶ 99 The prosecution team referred to Sauser's testimony as a "story" throughout closing argument. For example, one of the prosecutors told the jury that, to believe "Mr. Sauser's story, you also have to completely discredit [J.D.]" and, according to J.D., "that story . . . never happened." During rebuttal closing argument, another member of the prosecution team said, "[A]ccording to the defendant's story, [J.D.] didn't have a problem just handing the defendant a gun"; "I'm going to tell you that's exactly what [Sauser's] story is, speculation and imagination. It's a story that was contrived to save his hide"; and "You get to consider that when the defendant took the stand, why he told you what he told you, why he told you this imaginary speculative story . . . ." The prosecutor also referred to J.D.'s and S.M.'s testimony as a "story" when he said, "What do [J.D.] and [S.M.] have to lose or have to gain from this trial, from testifying and telling you their version of

46

the story? . . . I would be worried if both of those individuals have the exact same story and there were no issues." Sauser did not object to any of these statements.

## 2. Applicable Law

¶ 100 A prosecutor is prohibited from misstating the law, *see People v. Strock*, 252 P.3d 1148, 1154 (Colo. App. 2010), and expressing a personal opinion as to a witness's veracity or a defendant's guilt, *see Domingo-Gomez v. People*, 125 P.3d 1043, 1049-50 (Colo. 2005). For this reason, a prosecutor should avoid characterizing a defendant's testimony as a "story." *See People v. Marion*, 941 P.2d 287, 294 (Colo. App. 1996) (noting that a prosecutor should avoid stating a defendant's testimony was "all a crock" and "a story, make-believe," but determining the statements did not result in plain error). But a prosecutor may comment on the evidence presented at trial and argue any reasonable inferences that may be drawn from that evidence. *Domingo-Gomez*, 125 P.3d at 1048.

¶ 101 "During closing arguments, a prosecutor has wide latitude and may refer to the strength and significance of the evidence, conflicting evidence, and reasonable inferences that may be drawn from the evidence." *People v. Walters*, 148 P.3d 331, 334 (Colo.

App. 2006).  Accordingly, "[p]rosecutorial misconduct in closing argument rarely constitutes plain error."  *Strock,* 252 P.3d at 1152-53; *see People v. Rhea,* 2014 COA 60, ¶ 43, 349 P.3d 280, 291 ("[P]rosecutorial misconduct in closing arguments rarely, if ever, is so egregious as to constitute plain error." (quoting *Constant,* 645 P.2d at 847)).

### 3. The Prosecutors' References to Sauser's Testimony as a "Story" Do Not Require Reversal

¶ 102   Sauser argues that the prosecutors improperly suggested he was lying by referring to his testimony as a "story."  While the prosecutors should have avoided characterizing Sauser's testimony as a "story," *see Marion,* 941 P.2d at 294, they made the statements to highlight the inconsistencies between Sauser's testimony and that of J.D. and S.M.  *See Domingo-Gomez,* 125 P.3d at 1048-51; *see also People v. Kendall,* 174 P.3d 791, 797 (Colo. App. 2007) (concluding that the prosecutor's comments, which included references to "stories," were not improper because they "relate[d] to reasonable inferences regarding the credibility of witnesses").  One of the prosecutors also characterized J.D.'s and S.M.'s testimony as

"stories" to stress the inconsistencies between their and Sauser's versions of the key events.

¶ 103    Thus, we conclude that the prosecutors' references to "story" were not expressions of personal opinion but, instead, were intended to remind the jury that the victims' accounts contradicted Sauser's version of events.  *See People v. Clark*, 214 P.3d 531, 543 (Colo. App. 2009) (holding that the prosecutor's analogy to listening to a friend tell a story was not improper and noting that, "[a]lthough this particular approach clearly constituted commentary on defendant's veracity, it was not a clear statement of the prosecutor's personal opinion"), *aff'd on other grounds*, 232 P.3d 1287 (Colo. 2010); *see also People v. Gilmore*, 97 P.3d 123, 131-32 (Colo. App. 2003) (concluding that "the prosecutor's reference to the witness's 'story' was an acceptable reference to the witness's testimony about the events").

¶ 104    In addition, even if the "story" references constituted prosecutorial misconduct, they were not so "flagrantly, glaringly, or tremendously improper" as to constitute plain error.  *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997) (quoting *Vialpando*, 804

P.2d at 224). We therefore conclude that the prosecution team's use of "story" does not require reversal of Sauser's convictions.

## VI.    Cumulative Error

¶ 105    Sauser contends that the cumulative effect of the alleged errors deprived him of a fair trial and requires reversal. We disagree.

¶ 106    The doctrine of cumulative error requires that numerous errors be committed, not merely alleged. *People v. Thomas*, 2014 COA 64, ¶ 61, 345 P.3d 959, 969. Although a single instance of prosecutorial misconduct may be deemed harmless, "[n]umerous formal irregularities . . . may in the aggregate show the absence of a fair trial, in which event a reversal would be required." *Howard-Walker v. People*, 2019 CO 69, ¶ 24, 443 P.3d 1007, 1011 (quoting *Oaks v. People*, 150 Colo. 64, 66-67, 371 P.2d 443, 446 (1962)). But "[a] conviction will not be reversed if the cumulative effect of any errors did not substantially prejudice the defendant's right to a fair trial." *People v. Whitman*, 205 P.3d 371, 387 (Colo. App. 2007) (citing *People v. Roy*, 723 P.2d 1345, 1349 (Colo. 1986)).

¶ 107    As noted above, the only error at Sauser's trial was the trial court's decision to let the prosecutor ask Sauser a question that the

trial court and the prosecutor knew would elicit an invocation of Sauser's right against self-incrimination. Thus, we conclude there was no cumulative error. *See People v. Thames*, 2019 COA 124, ¶ 69, 467 P.3d 1181, 1194 ("[A] single error is insufficient to reverse under the cumulative error standard."). (Even if we were to assume the prosecutors' use of the puzzle analogy was prosecutorial misconduct, that error, coupled with the error involving Sauser's right against self-incrimination, did not deprive Sauser of a fair trial. *See Carter*, ¶¶ 80-81, 402 P.3d at 496.)

## VII. Merger

¶ 108 Sauser contends that felony menacing is a lesser included offense of aggravated robbery. Thus, he argues that his felony menacing convictions must be vacated. We disagree.

### A. Standard of Review

¶ 109 We review de novo whether merger applies to criminal offenses. *People v. Esparza-Treto*, 282 P.3d 471, 478 (Colo. App. 2011).

### B. Applicable Law

¶ 110 The Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit multiple punishments for the same

51

offense. U.S. Const. amend. V; Colo. Const. art. II, § 18.

Accordingly, the merger doctrine precludes a defendant's conviction

of both a greater and lesser included offense. § 18-1-408(1)(a),

C.R.S. 2020; *People v. Rock*, 2017 CO 84, ¶ 11, 402 P.3d 472, 476.

¶ 111    We apply a strict elements test to determine whether one

offense is a lesser included offense of another. *Reyna-Abarca v.*

*People*, 2017 CO 15, ¶ 53, 390 P.3d 816, 824. "Under this test, we

compare the elements of the two criminal statutes . . . ." *Id.* "[A]n

offense is a lesser included offense of another offense if the

elements of the lesser offense are a subset of the elements of the

greater offense, such that the lesser offense contains only elements

that are also included in the elements of the greater offense." *Id.* at

¶ 3, 390 P.3d at 818; *see People v. Leske*, 957 P.2d 1030, 1036

(Colo. 1998) (comparing the statutory elements of the offenses to

determine whether an offense is a lesser included one).

## C.    Analysis

¶ 112    As noted above, Sauser was convicted of felony menacing

against J.D. and S.M. and aggravated robbery against S.M. A

person commits aggravated robbery if, "during the act of robbery or

immediate flight therefrom[,] . . . by the use of force, threats, or

intimidation with a deadly weapon [he] knowingly puts the person robbed or any other person in *reasonable fear of death or bodily injury.*" § 18-4-302(1)(b) (emphasis added). In contrast, a person commits felony menacing "if, by any threat or physical action, he or she knowingly places or attempts to place another person *in fear of imminent serious bodily injury*" by use of a "deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." § 18-3-206(1)(a) (emphasis added).

¶ 113    A division of this court held that felony menacing does not merge into aggravated robbery. *People v. Sisneros*, 44 Colo. App. 65, 67, 606 P.2d 1317, 1318 (1980). *Sisneros* explained that aggravated robbery may be committed without committing felony menacing because "[t[he requirement in the felony menacing statute that the actor knowingly places a victim in fear of 'serious bodily injury' is distinguishable from the requirement that the robber knowingly places a victim in fear of 'bodily injury.'" *Id.*

¶ 114    Sauser contends that, while the division in *Sisneros* accurately distinguished between bodily injury and serious bodily injury, it

erred by ignoring the reference to "death" in the aggravated robbery statute. We are not persuaded.

¶ 115 The language in the aggravated robbery statute includes "reasonable fear of death *or* bodily injury," § 18-4-302(1)(b) (emphasis added), while felony menacing includes fear of "imminent serious bodily injury." § 18-3-206(1). We agree with the analysis in *Sisneros* that the elements are distinguishable because the degree of injury required for the fear element of felony menacing is greater than the degree of injury required for the fear element of aggravated robbery. *See Sisneros*, 44 Colo. App. at 67, 606 P.2d at 1318.

¶ 116 Fear of death is different from fear of serious bodily injury, just as fear of bodily injury is different from fear of serious bodily injury. If this were not so, the General Assembly's use of "death" and "bodily injury" in section 18-4-302(1)(b) and use of "serious bodily injury" in section 18-3-206(1) would make no sense. *See People v. Abiodun,* 111 P.3d 462, 465 (Colo. 2005) ("Where the general assembly proscribes conduct in different provisions of the penal code and identifies each provision with a different title, its intent to establish more than one offense is generally clear."); *see also Dep't of Transp. v. Stapleton,* 97 P.3d 938, 943 (Colo. 2004) ("We construe

a statute as a whole, ascribing to each word and phrase its familiar and generally accepted meaning, so as to reflect the legislative intent of the General Assembly."); *People v. McNeese*, 865 P.2d 881, 884 (Colo. App. 1993) ("It is presumed that the General Assembly has knowledge of the legal import of the words it uses and that it intends each part of the statute to be given effect."). We further note that, unlike the aggravated robbery statute, the menacing statute includes the concept of imminence.

¶ 117   Thus, we hold that felony menacing is not a lesser included offense of aggravated robbery, and we reject Sauser's contention that his convictions for felony menacing merge into his conviction for aggravated robbery.

## VIII.  Conclusion

¶ 118   The judgment is affirmed.

JUDGE NAVARRO and JUDGE TOW concur.